## 14807

### UNITED STATES RUBBER PRODUCTS, INC., v. SOUTH CAROLINA TAX COMMISSION

(1 S. E. (2d), 153)

*Messrs. John M. Daniel, Attorney General,* and *Claude K. Wingate,* for appellant,

*Mr. A. L. Wardlaw,* for respondent, 

January 13, 1939.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The respondent is a foreign corporation which operates a plant at Winnsboro, Fairfield County, South Carolina, where it manufactures a certain fabric which is sent out of the State and is there processed; that is to say, it is used in the making of automobile tires and other articles. None of the fabric is sold in the State in which it is manufactured at the Winnsboro plant.

The defendant-appellant is an administrative arm of the government of South Carolina, charged with the duty of assessing and collecting income taxes.

For the years 1935 and 1936 the respondent made return of its income for taxation, and calculated the taxes as if the provisions of subsection 2 rather than those of subsection 1 of Section 2451 of the Code of 1932 applied. For the year 1935 it paid an income tax of $6,394.38, and $9,374.30 for the year 1936.

Subsequently, in 1938, the defendant-appellant notified the plaintiff-respondent that there were due additional taxes in the amounts of $6,223.26 for the year 1935 and $9,116.76 for the year 1936, making an aggregate total of $15,557.11. (All figures taken from the Transcript of Record.)

Respondent paid these taxes under protest, and in due time brought this action to recover them.

The case was heard by Judge Bellinger of the Fifth Circuit, without a jury. He filed an able and comprehensive decree, in which he upheld the contention of the plaintiff, to wit, that sub-section 2 of Section 2451 applied to the facts of the case instead of subsection 1, and gave judgment for plaintiff.

The defendant appeals upon grounds stated in thirteen exceptions. There is no dispute about the facts and both parties are agreed that the sole question at issue is this: Should plaintiff's income taxes for the years 1935 and 1936 be assessed and allocated under the terms of subsection 1 or Subsection 2 of Section 2451 of the Code of 1932?

It is desired that the applicable portions of the two subsections be readily consulted, therefore, we reproduce a summary of them here:

The first of these sub-sections, being No. (1), provides that every foreign corporation or non-resident individual engaged in the business of manufacturing within South Carolina, regardless of what other business it or they may be engaged in, its or their income subject to the South Carolina tax, shall be allocated according to the following rule: The proportion of the income allocable to South Carolina shall be arrived at by multiplying the total net income derived from all sources by a fraction, the numerator of which shall be the value of its or their real estate and tangible personal property located and actually used in its or their business in South Carolina, the denominator of which shall be the total value of the real estate and tangible personal property located and actually used in the conduct of its or their business everywhere.

The next sub-section, being No. (2), is applicable to another class of foreign corporations or non-resident individuals, and provides:

That if such foreign corporation or non-resident individual is engaged in the business of the sale of personal property produced by such foreign corporation or non-resident individual in whole or in part without and sold within South Carolina, it or their income allocated to South Carolina shall be made according to the following rule:

The net income shall first be computed by deducting from the gross income derived from sources partly within and partly without the State, the expenses, losses, or other deductions properly apportioned or allocated thereto and a

ratable part of any expenses, or other deductions which cannot definitely be allocated to some item or class of gross income. When the net income is so determined, it shall be divided in two (2) equal parts, one part thereof shall be apportioned in accordance with the value of the taxpayer's tangible property within and without the State, the portion attributable to South Carolina shall be determined by multiplying such one-half by a fraction, the numerator of which shall consist of the value of the taxpayer's tangible property within South Carolina, the denominator of which shall consist of the value of the taxpayer's tangible property wherever located. The other one-half of such net income shall be apportioned by multiplying such one-half by a fraction, the numerator of which shall consist of the taxpayer's gross sales for the taxable year or period within the State, the denominator of which fraction shall consist of the taxpayer's gross sales for the taxable year or period, both within and without South Carolina.

It is admitted that the respondent is a foreign corporation and earns income within and without the State. It does not keep its books of account so that they reflect the gains and losses in South Carolina separate and distinct from the gains and losses in other States, as is required by Sub-section 1. The method of allocating income which arises from business done in more than one State, was always a difficult problem.

The history of income tax legislation in this State is interesting. The State adopted its first income tax law in 1922 (32 St. at Large, p. 896), and required by its terms that those liable to pay income tax in this State should pay to the State one-third as much as the taxpayer paid to the United States. In 1924 (33 St. at Large, p. 1173), the State added to its income tax law the provisions contained in Sub-section 1 of Section 2451 of the Code of 1932. In 1926 the State enacted a complete income tax law (35 St. at Large, p. 1), which had no reference to the Federal Acts.

Both Sub-sections 1 and 2, as they are now embodied in the Code in Section 2451, were retained.

The matter at issue between the parties here is this: ■ Should the assessment of the income of the respondent have been made under the provisions of Sub-section 1, or under the provisions of Sub-section 2?

Let us analyze the provisions of these sub-sections and apply them to the facts.

Sub-section 1 expressly declares that every foreign corporation or non-resident individual engaged in the business ·of manufacturing in South Carolina, *regardless of what other business it or they may be engaged in,* its or their income subject to South Carolina tax shall be allocated ac-·cording to the following rule. Then follows the statement ·of the rule of allocation, the single standard rule.

In our view, the fact which determines the sub-section under which the tax shall be assessed is contained in the language which is here briefly set out above. There is no particle of doubt that respondent was in 1935 and 1936, when these taxes were assessed and collected, engaged in the business of manufacturing in South Carolina. If it be argued that their business extended beyond South Carolina when it sent its fabric products outside the State to be proc-·essed, that they were converted into automobile tires and ·other rubber products, and returned in part to South Car-·olina and sold, and that these facts took the respondent outside the provisions of Sub-section 1, the all sufficient an-·swer is that Sub-section 1 provides that regardless of what ·other business they may be engaged in, its or their income subject to the South Carolina tax shall be allocated accord-ing to the following rule, etc. It seems to us that the con-·clusion is inescapable that respondent is subject to the South ·Carolina tax, because it is indisputably engaged in the busi-·ness of manufacturing within the State of South Carolina.

Now Sub-section 1 of Section 2451 also provides that: ·"If the entire trade or business of a non-resident individual ·or a foreign corporation is carried on in the jurisdiction of

this State the tax imposed by this article shall be computed upon the entire income of such non-resident individual or foreign corporation: Provided, further, except as herein provided, each and every foreign corporation, non-resident individual engaged in the business of manufacturing within the jurisdiction of the State of South Carolina shall make returns and pay annually an income tax from business done and transacted within the State, computed on a proportion of its entire net income to be determined according to the following rules: * * *." (Then follow the rules, a summary of which is given hereinabove.) " * * * Provided, further, That when a foreign corporation or non-resident individual shows to the satisfaction of the Tax Commission that their books of account are kept in such a manner as to reflect the true net income accruing or arising from business transacted within the State, the return may, with the approval of the Tax Commission, be based upon such books of account and the tax paid upon the net income so determined."

If, then, the respondent desired to avoid the provisions of Sub-section 1, it should have kept its books so that the Tax Commission could know what part of its income was derived wholly from business within the State. It did not obey this injunction of the law.

What are the provisions of Sub-section 2 which regulate the conditions under which the respondent would be justified in basing and returning its income under Sub-section 2? Those engaged in the business of manufacturing or producing without the State and selling such products so produced or manufactured within the State are classed under Sub-section 2.

The Circuit Judge held that it was admitted that respondent's gross income was derived from the sale of personal property manufactured in part within the State of South Carolina, and sold within this State. We think his Honor erred.

There is no proof of the value of the fabric manufactured by respondent in this State and shipped out of the State to be processed. There is no proof that the gross income shown by the exhibits, arose wholly from the products of respondent's manufacturing plants. Certainly there is proof that only a very small proportion of such total sales were derived from sales in this State.

In order to hold that the tax of respondent should be computed and allocated under Sub-section 2, the learned trial Judge found it necessary to transpose the language of each of the sub-sections under investigation.

For instance he has written into Sub-section 1 the words, "and sell such products without the State." He has also written into Sub-section 2 the following words, "engaged in manufacturing within the State."

The distinguished Circuit Judge justifies these interpolations of extra words into the two sub-sections upon the ground that it is necessary to ascertain the intent of the Legislature. We readily agree that in some circumstances such interpolations may be resorted to, but we do not find such necessity here.

The insertion in Sub-section 1 of the words "and sell such products without the State," does not add anything to the clarity of the sub-section, but changes the meaning of what seems to us to be an unambiguous enactment.

And the same may be said of the insertion of the words "engaged in manufacturing within the State," inserted in Sub-section 2. The language thus added perverts the plain meaning of the language placed there by the Legislature.

The decree of the Circuit Judge states: "If, as the defendant contends, Sub-section (1) is applicable to every foreign corporation engaged in manufacturing within the State, then a large class of foreign corporations who are manufacturing and selling within the State are subject to the provisions of both sub-sections, which clearly is contrary to the legislative intent."

We cannot concur in this view. It is true that before the Act, now embodied in the Code as Sub-section 1, was passed, the very condition against which the decree inveighs, did exist. It was to remedy that condition that the Legislature passed the Act of 1924. The circuit decree nullifies the Act.

It is not necessary that we follow in detail the exceptions of the appellant. We have touched upon those which in our judgment cover the salient issues.

What is the applicable law?

As we understand the situation, it is this: The respondent and the appellant differ in their understanding and application of the law pertaining to the construction of Sub-sections 1 and 2 of Section 2451 of the Code of 1932. It will not be denied that the Courts have full power to construe these sections. We know of no fixed rule by which they shall be governed in construing them. However, the method pursued by the Federal Courts and the Courts of this State in the interpretation and application of Federal and State income tax laws in helpful.

It is said in the case of *Read Phosphate Co. v. South Carolina Tax Commission,* 169 S. C., 314, 168 S. E., 722, 728: "The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration, and ought not to be overruled without cogent reasons."

When South Carolina, in 1926, enacted its own complete income tax law, it devolved upon the Tax Commission the solemn duty of construing and executing that law. To that end the Commission was given authority to make rules and regulations governing their work. Necessarily this required careful and exhaustive study of the provisions of the Act, and of the income tax laws and regulations of other states and of the United States. It is for this reason the Courts have said that their interpretation of the law should be given full consideration and should not be overruled without cogent reasons.

Since 1926 the provisions of Sub-section 1 of Section 2451 of the Code have been re-enacted without change, and the construction now given it is that given it by the Tax Commission all these years.

In the case of *National Lead Co. v. U. S.*, 252 U. S., 140, 40 S. Ct., 237, 64 L. Ed., 496, it is said that repeated re-enactment of a statute without substantial change, amounts to an implied legislative recognition and approval of an established executive construction of the statute.

The utterance quoted herein from the *Read case, supra,* is reiterated by our Court in the case of the *City of Spartanburg v. Leonard,* 180 S. C., 491, 186 S. E., 395, 397, in these words: "Another well-established rule of statutory construction comes to the aid of the City of Spartanburg in this situation. It is that the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons."

"The Congress in the Revenue Acts of 1928 and 1932 re-enacted section 245 (26 U. S. C. A., § 203), without alteration. This action was taken with knowledge of the construction placed upon the section by the official charged with its administration. If the legislative body had considered the Treasury interpretation erroneous, it would have amended the section. Its failure so to do requires the conclusion that the regulation was not inconsistent with the intent of the statute * * *." *Massachusetts Mut. Life Ins. Co. v. U S.,* 288 U. S., 269, 53 S. Ct., 337, 339, 77 L. Ed., 739, and citing numerous other cases, including *National Lead Co. v. U. S. supra.*

Our conclusion, after careful consideration, is that the income tax of the respondent for the years 1935 and 1936 were properly assessed and collected under Sub-section 1 of Section 2451 of the Code of 1932.

Accordingly, the circuit decree appealed from is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BAKER and FISHBURNE concur.

Mr. Justice Carter did not participate on account of illness.