238 F.2d 606
 OKLAHOMA REAL ESTATE COMMISSION, John B. Martin, Oliver Black, Charles E. Young and J. T. Frizzell, Appellants,
v.
NATIONAL BUSINESS AND PROPERTY EXCHANGE, Inc., a California corporation; and National Business and Property Exchange, Inc., a Delaware corporation, Appellees.
 No. 5364.
 United States Court of Appeals Tenth Circuit.
 October 24, 1956.
 Rehearing Denied November 16, 1956.
 
 Edward E. Soule, Oklahoma City, Okl. (Roy C. Lytle, David C. Johnston, Oklahoma City, Okl., Mac Q. Williamson, Atty. Gen., of Oklahoma, and James C. Harkin, Asst. Atty. Gen., of Oklahoma, were with him on the brief), for appellants.
 John B. Dudley, Jr., Oklahoma City, Okl. (Ralph B. Herzog, Beverly Hills, Cal., and Dudley, Duvall & Dudley, Oklahoma City, Okl., were with them on the brief), for appellees.
 Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.
 BRATTON, Chief Judge.
 
 
 1
 National Business and Property Exchange, Inc., a corporation organized under the laws of California, brought this action against Oklahoma Real Estate Commission, hereinafter referred to as the Commission. The action was one for a declaratory judgment determining that plaintiff was not a real estate broker and that its agents and representatives were not real estate brokers or salesmen subject to the provisions of the Oklahoma Real Estate License Act, as amended, 59 O.S.1951 §§ 831-857, sometimes hereinafter referred to as the Act. Judgment was entered for plaintiff. On appeal, it was held that in the then posture of the case the State of Oklahoma was the real party defendant in interest. The cause was remanded with directions to vacate the judgment and dismiss the action, not on the merits but for lack of jurisdiction and without prejudice to the right of plaintiff to apply for permission to amend its complaint and make additional parties defendant. Oklahoma Real Estate Commission v. National Business and Property Exchange, 10 Cir., 229 F.2d 205. Thereafter, by amendment to the complaint, National Business and Property Exchange, Inc., a corporation organized under the laws of Delaware, was joined as a party plaintiff, and John B. Martin, Oliver Black, and Charles E. Young, members of the Commission, and J. T. Frizzell, secretary thereof, were joined as parties defendant. Apparently the relationship between the two corporate plaintiffs was merely that of predecessor and successor in interest and for convenience reference will be made to them in the singular. In the amendment to the complaint, it was pleaded among other things that the individual defendants acted unreasonably, arbitrarily, and capriciously in asserting that plaintiff was subject to the provisions of the Act and was unlawfully conducting its business in Oklahoma without first complying with the provisions of the Act. By motions to dismiss and answers, the defendants pleaded lack of federal jurisdiction of the action; pleaded that the State of Oklahoma was the real party defendant in interest and therefore the action was prohibited by the Eleventh Amendment to the Constitution of the United States; pleaded that there was pending in the district court of Oklahoma County an action instituted by the Commission against National Business and Property Exchange, Inc., and others, in which all of the issues herein could and would be determined; and pleaded that this action should not be entertained pending the conclusion of the action in the state court.
 
 
 2
 The court in its judgment determined that plaintiff was not a real estate broker and that its agents and representatives were not real estate salesmen or brokers, within the purview of the Act; further determined that plaintiff was not conducting its business in violation of the Act; further determined that the individual defendants, as members of the Commission and as secretary thereof, respectively, had acted and were acting in an arbitrary and capricious manner beyond the borders of the Act in asserting that plaintiff was subject to the provisions of such Act; and enjoined the defendants until the further order of the court from prosecuting the action in the state court or from otherwise interfering with plaintiff in the operation of its business.
 
 
 3
 The Real Estate License Act of Oklahoma was enacted into law in 1949. Section 2 thereof, 59 O.S.1951 § 832, defines the term "`real estate broker'" to include anyone engaging in or holding himself out as engaging in or carrying on the business of "selling, exchanging, purchasing, renting, leasing or negotiating the sale, or exchange, purchase, rental or leasing of any real estate for others for fees, commissions or other valuable considerations." Section 3, 59 O.S.1951 § 833, defines the term "`real estate salesman'" to mean and include any person "employed or engaged by or on behalf of a real estate broker to do or to deal in any act, acts, or transactions set out, or comprehended by the definition of a real estate broker in Section 2 of this Act for compensation or otherwise." Section 6, 59 O.S.1951 § 836, requires anyone engaged in the business of a real estate broker as defined by the Act to obtain a license as such. And section 7, 59 O.S.1951 § 837, requires a real estate salesman, as defined by the Act, to obtain a license as such. In 1953, section 2 of the Act was amended to include in the definition of a real estate broker anyone who "lists" real estate or the improvements thereon for sale, 59 O.S.1953 Supp. § 832. And in 1953, the Act was further amended to provide that no person, corporation, or association engaged within the state in the business of acting in the capacity of real estate broker or real estate salesman "shall bring or maintain an action in any court in this State for the recovery of compensation for services rendered in the listing, buying, selling, exchanging, leasing or renting of any real estate without alleging and proving that such person, corporation, or association was a licensed real estate broker or salesman at the time when the alleged cause of action arose." 59 O.S.1953 Supp. § 855.
 
 
 4
 Plaintiff publishes and circulates monthly in interstate commerce in Oklahoma and elsewhere under a second class mail permit a publication denominated "National Buyers' Guide". In addition to articles of interest concerning various sections of the United States, the publication carries extensive advertisements for the sale or exchange of farms, ranches, businesses, and income properties in all sections of the United States. The cost of advertising in the publication is based solely upon a fixed charge for the space requested. The charge bears no relationship to the value of the business or property and is not contingent upon a sale being made. The cost of the advertising space is payable regardless of whether the business or property is sold. Copies of the publication are furnished free of charge to real estate brokers throughout the United States, including Oklahoma, upon written application therefor. Plaintiff also compiles, publishes and distributes to individuals, firms, or corporations who have purchased advertising space in "National Buyers' Guide" a compilation denominated "Confidential Report of Buyers". This compilation is distributed to plaintiff's advertisers twice monthly. It is compiled from the names of individuals, firms, and corporations who have responded to plaintiff's national advertising program. And plaintiff carries on extensive advertising campaigns in order to solicit and secure customers for the purchase of advertising space in "National Buyers' Guide", and to procure circulation of such publication among people interested in buying farms, businesses, and other property. Agents and representatives of plaintiff in Oklahoma and elsewhere follow a general pattern of procedure fixed by plaintiff. The essence of the procedure is to obtain from customers written contracts with plaintiff. Each contract is for advertising space in the publication and it provides that plaintiff is not a real estate broker; that the only service rendered by plaintiff is the publication and distribution of an advertisement in the publication of the kind and type selected by the advertiser and the furnishing to the customer of copies of the compilation called the "Report". These contracts when obtained in Oklahoma and elsewhere are forwarded to the home office of plaintiff in Los Angeles, California, and are accepted or rejected there. The Commission determined in effect that plaintiff was engaged in Oklahoma in activities which constituted a real estate brokerage business within the meaning of the Act and therefore was required to obtain a license as a real estate broker as a prerequisite to the further conduct of such activities. Except upon appropriate allegations to the effect that the Act itself is unconstitutional or that the Commission or its members or secretary is or are acting in an arbitrary and capricious manner, a state court rather than a federal court is the forum in which to settle a justiciable controversy respecting the application of the provisions of the Act to the business activities of plaintiff. Read v. National Equity Life Insurance Co., 10 Cir., 114 F.2d 977; Oklahoma Real Estate Commission v. National Business and Property Exchange, Inc., supra.
 
 
 5
 Plaintiff does not attack the action of the Commission on the ground that the Act is unconstitutional. It challenges the determination of the Commission to the effect that plaintiff is within the purview of the Act solely and exclusively upon the ground that the individual defendants composing the Commission, and the secretary thereof, acted in an unreasonable, arbitrary, and capricious manner. And in its effort to discharge the burden resting upon it to show conduct of that kind on the part of the individual defendants, plaintiff relies upon six specified and enumerated acts. The first act relied upon is a letter written by the secretary of the Commission to a subsidiary of plaintiff under date of December 16, 1953. The substance of the letter was to express the view that the action of such subsidiary in mailing postcards to persons within the State of Oklahoma asking for listings of business or income property without first complying with the provisions of the Act constituted a violation of such Act, and to request the subsidiary to discontinue such activity until it had complied with the Act. The second act upon which reliance is placed was a letter written by a representative of plaintiff to the secretary of the Commission on January 5, 1954. The substance of the letter was to acknowledge receipt of the letter of the secretary to the subsidiary, to remind the secretary of a conference previously held at which the nature of the business conducted by plaintiff was discussed, and to express the view that plaintiff was not within the scope of the Act. The third act upon which plaintiff relies was the promulgation, distribution, and publication of a document over the signature of the Commission and the secretary. The substance of the document was the statement that several non-resident corporations were circularizing real estate brokers in Oklahoma seeking to make agreements with such brokers to sell businesses and other real estate; the statement that such non-resident corporations charged large advertising and franchise fees when taking listings and had made very few if any sales; the request that the persons to whom the document was distributed check with the Commission before making any agreements with such non-resident corporations; and the warning that association with an unlicensed broker and division of fees earned in real estate transaction would be ground for the revocation of the license held by a broker in Oklahoma. The fourth act relied upon was the holding of a conference at the office of the Attorney General of Oklahoma. The Attorney General, two Assistants Attorney General, one member of the Commission, the secretary of the Commission, an attorney for plaintiff, and a representative of plaintiff were present. The question whether plaintiff was within the scope of the Act and was required to comply with its provisions as a prerequisite to the conduct of its business in Oklahoma was discussed. And an understanding was reached that the Commission would request a formal opinion of the Attorney General relating to the question, but no such request was ever made. The fifth act upon which reliance is placed was a letter written by an Assistant Attorney General to the attorney for plaintiff under date of March 26, 1954. The substance of the letter — written in reply to an inquiry from the attorney — was that the Attorney General had not been requested to give an opinion relating to the right of plaintiff to operate its business in Oklahoma without first complying with the provisions of the Act, and therefore no opinion had been given. And the sixth and last act relied upon was the secretary of the Commission testifying in a civil action pending in the justice of the peace court in Oklahoma City that it was the position of the Commission that plaintiff was acting as a real estate broker in Oklahoma without first obtaining a license to conduct its business and therefore under the Act it was forbidden to recover judgment upon its contracts of listing. The action in which the secretary testified was one brought by plaintiff to recover upon a contract of listing. It is stated in the brief of plaintiff that the secretary voluntarily testified in such case, but there is nothing in the record to support the statement. So far as the record before us discloses, he may have been compelled by the process to appear and testify. When the several acts and conduct on the part of the Commission, the individuals composing the Commission, and the secretary of the Commission, are considered separately and collectively, it is clear the defendants acted with an intent and purpose to administer the Act as they understood it. They may have been mistaken in reaching the conclusion that plaintiff was within the purview of the Act and therefore was required to comply with its provisions as a prerequisite to the further conduct of its business in the state. But a good-faith mistake or error on the part of the defendants in the administration of the Act as they understood it did not constitute arbitrary or capricious conduct, essential to jurisdiction of a federal court. Read v. National Equity Life Insurance Co., supra.
 
 
 6
 Plaintiff points with emphasis to section 16 of the Act, 59 O.S.1951 § 846, for support in its contention that the defendants acted arbitrarily and capriciously. The statute makes it the duty of the Attorney General to render to the Commission opinions on all questions of law relating to the interpretation of the Act, or arising in the course of its administration. And it provides that the Commission shall have authority to employ such attorney or attorneys as may be necessary in all actions and proceedings brought by or against the Commission under or pursuant to any of the provisions of the Act. The argument advanced is that the actions of the defendants, in completely disregarding the mandate of the statute and unlawfully taking it upon themselves to place their own interpretation upon the Act in respect to its application to the activities of plaintiff, constituted arbitrary and capricious conduct. It is the general rule that an agency charged with the duty of administering an act is impliedly clothed with power to construe it as a necessary precedent to administrative action. Bodinson Manufacturing Co. v. California Employment Commission, 17 Cal.2d 321, 109 P.2d 935; Utah Hotel Co. v. Industrial Commission, 107 Utah 24, 151 P.2d 467, 153 A.L.R. 1176; Washington Township of Nemaha County v. Hart, 168 Kan. 650, 215 P.2d 180; United States Rubber Products v. South Carolina Tax Commission, 189 S.C. 386, 1 S.E.2d 153. Manifestly, the section of the act referred to had a two-fold purpose. One was to require the Commission to call upon the Attorney General for formal opinions when deemed necessary in connection with the interpretation and administration of the Act and to make it the duty of the Attorney General to render such opinions upon request. And the other was to restrict the power of the Commission respecting the employment of private counsel to actions and proceedings brought by or against the Commission under or pursuant to the provisions of the Act. The particular section does not indicate a legislative intent or purpose to withhold from the Commission all power to interpret the Act as a basis upon which to predicate routine administrative action. Therefore, the failure to obtain from the Attorney General an opinion in respect to whether plaintiff was within the purview of the Act cannot be regarded as arbitrary or capricious action.
 
 
 7
 The judgment is reversed and the cause is remanded with directions to dismiss the action without prejudice to the right of the parties or any of them to proceed in the state court.