### 15687

**HARLING v. BOARD OF COMMISSIONERS OF POLICE INSURANCE AND ANNUITY FUND OF THE STATE OF SOUTH CAROLINA**

(31 S. E. (2d), 913)

320

*Mr. Heyward Brockinton* and *Mr. John W. Crews,* both of Columbia, S. C., Counsel for Appellant,

*Mr. B. E. Nicholson,* of Edgefield, S. C., Counsel for Respondent,

November 3, 1944.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court:

This appeal comes by way of the Court of Common Pleas from Edgefield County where the plaintiff brought action based upon the defendant's refusal to pay plaintiff's claim for certain disability benefits under an Act approved March 17, 1937, 40 St. at Large, page 295, and known as "An Act to Create a Board of Police Commissioners to Provide Revenue or a Source of Revenue for the Purpose of Paying Insurance and Annuity Benefits to the Peace Officers of the State of South Carolina."

The appellant refused to pay such claimed benefits for the reason that the plaintiff was still discharging the duties of the office of sheriff of Edgefield County and drawing salary and compensation for his said services. The cause came on

to be tried at the March, 1944, term of Court of Common Pleas of Edgefield County before Honorable M. M. Mann, Presiding Judge, and a jury, upon the Summons and Complaint and Answer filed in the cause.

At the close of the plaintiff's testimony in the case, the defendant made a motion for a nonsuit, which was refused by the Presiding Judge. At the close of the plaintiff's and defendant's testimony in the case motions were made on behalf of the plaintiff and defendant for a directed verdict. His Honor, Judge Mann, refused defendant's motion for a directed verdict, but directed a verdict for the plaintiff, and the defendant now appeals to this Court upon the following exceptions:

"1. That his Honor erred in granting plaintiff's motion for a directed verdict and in refusing to grant defendant's for a directed verdict; the error being that his Honor should have held that the undisputed physical fact of plaintiff continuing to hold the office of sheriff of Edgefield County and receiving emoluments therefrom refuted the claim and allegations of total and permanent disability.

"2. That his Honor erred in granting plaintiff's motion for a directed verdict and refusing defendant's motion for a directed verdict; the error being that his Honor should have ruled that the plaintiff had failed to prove total and permanent disability within the meaning of the words as use in the Police Insurance and Annuity Act.

"3. That his Honor erred in granting plaintiff's motion for a directed verdict and refusing defendant's motion for a directed verdict and in applying to the instant case the rules of law relating to private insurance contracts and so interpreting the statute in question; the error being that his Honor should have held and so interpreted the statute that the benefits sought thereunder are in the nature of a pension and the maturity of such benefits are dependent and contingent upon resignation of plaintiff as sheriff of Edgefield County.

"4. That his Honor erred in interpreting the statute in question and holding that the Legislature intended to compensate Peace Officers and pay to them total and permanent disability benefits in addition to their regular compensation received from their position as such Peace Officers; the error being that his Honor should have held and so interpreted the statute to the effect that it was not the intention of the Legislature to pay total and permanent disability to Peace Officers in addition to their regular salaries.

"5. That his Honor erred in directing a verdict for plaintiff and in refusing to direct a verdict for the defendant; the error being that his Honor should have held that more than one inference could have reasonably been drawn from the testimony on the issue of permanent and total disability and should have submitted the case to the jury for its determination of the evidence and the question of the extent of plaintiff's injury.

"6. That his Honor erred by ruling and holding that as a matter of law the nature and extent of plaintiff's injury constituted permanent and total disability; the error being that his Honor should have held whether or not plaintiff's injury constituted permanent and total disability was a question of fact and should have submitted the said question to the jury for its determination."

While the appellant appeals upon six exceptions, these exceptions raise only two questions:

1. Did the respondent prove by the greater weight or preponderance of the evidence that he is totally and permanently disabled under the terms of the Act?

2. Did the Legislature intend to allow a peace officer to continue to work and receive his salary and at the same time receive the benefits granted under the Statute?

A study of the record leaves no doubt that the claimant is totally and permanently disabled. This the appellants themselves admit by awarding to respondent total and permanent

benefits under the Act, but they go further and provide that before any of such funds shall be paid to the respondent he must resign his office as sheriff.

The testimony offered to prove the fact of respondent's total and permanent disability was uncontradicted and as a whole tended to establish the truth of such allegation. This made the question one of law, and the trial Judge not only was entirely within his rights, but it was his duty under the circumstances to direct a verdict for the plaintiff unless the Board of Commissioners were within their rights when they placed in the award the requirement that respondent resign his office before receiving payments for such disability. *Slaughter Co. v. King Lumber Co.*, 79 S. C., 338, 60 S. E., 705.

This, then, brings before us the consideration of question number two which is the construction of that portion of the Act listed as Sec. 3812-2 of 1942 Code of Laws of South Carolina, the pertinent portions of which are:

"Benefits pay peace officers totally and permanently disabled.—Any peace officer upon becoming totally and permanently disabled after having served continuously for a period of one (1) year or more as a peace officer in South Carolina shall be entitled to be paid monthly as such disability continues by the treasurer of the board, upon proper application being made therefor, a percentage of the average monthly salary received by such officer over a period of six (6) months immediately preceding the date of making such application, such percentage shall be based upon the number of years of continuous service rendered by the applicant as a peace officer in the State of South Carolina; as follows: * * * For continuous service of at least five (5) years, sixty (60%) per cent of such average monthly salary."

"The books are so full of cases holding that the intention of the legislative body is the first rule of construction of stat-

utes that a citation of them is wholly unnecessary. Full effect must be given to each section, and the words must be given their plain meaning. Where there is no ambiguity, words must not be added to or taken from the statutes. In this case there is no hint of an ambiguity, nor is there a use of jumbled or misunderstood words. Every word is so plain, every sentence so complete, that the legislative intent can hardly be misunderstood. As far back as *Guery v. Kinsler,* 3 S. C., 423, the Court has held that, where the terms of a statute are clear and not ambiguous, there is no room for construction, and Courts must apply them according to their literal meaning." *Home Building. & Loan Ass'n v. City of Spartanburg et al.,* 185 S. C., 312; 194 S. E., 139.

"It is perhaps unnecessary to say that courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within·the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Legislature, and it is the province of the courts to construe, not to make, the laws." *Creech v. South Carolina Public Service Authority et al.,* 200 S. C., 127, 20 S. E. (2d), 645, 652.

In the case of *Weston v. Board of Commissioners of Police Insurance and Annuity Fund,* 196 S. C., 491, 13 S. E. (2d), 600, 601, the Act in question has been before this Court for construction and although Section 3812-2 was not directly involved in the issue of that case, the language of that case, the language of Justice Fishburne in the unanimous opinion of the Court said:

"A system of pensions and death benefits to police and peace officers injured or disabled while on duty, or retiring

after a term of service has been in effect in several states for many years. In this State, however, this was an unexplored field until the passage of the Act of 1937. In accordance with settled principles of 'construction, the provisions of the section under discussion are to be read and understood according to the natural and obvious meaning and import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. In keeping with familiar concepts, the statute as a whole must receive a practical, reasonable and fair interpretation consonant with the purpose, design and policy of the lawmakers. If its terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it clearly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense. It is only where the intention of the Legislature is vaguely or inadequately expressed, or where the terms of the Act are equivocal, that the Court must resort to construction.

"As we view it, there are no contradictions or ambiguities in the Act, real or seeming. The statute is explicit and unambiguous, and there is no room or occasion for interpretation. Under the plan provided in the Act, the funds were to be raised and accumulated from monthly dues paid in by the members of the South Carolina Peace Officers' Association, and from a certain proportion of all fines collected in the Municipal Courts, Magistrate's Courts, and Courts of General Sessions in the State."

As we view it, there are no ambiguities in the wording of this portion of the Act and the wording therein should be given its plain, ordinary meaning.

This Court is aware of the well-established rule that ▮▮ the construction given to a statute by those charged with its execution is entitled to the most respectful consideration and ought not be overruled without cogent

reasons. However, had the Legislature wished to make it a requirement that, before a member could be eligible for disability benefits, that he first resign from such position as held at the time of suffering such disability, then it would have been a simple matter to so state. This the Legislature did not see fit to do and it is beyond the province of this Court to place such limitation therein.

Complaint is made that respondent continuing to receive his salary is irreconcilable with his claim of total and permanent disability. The testimony shows that others have been doing his work for him and if Edgefield County wishes to continue to pay to respondent his salary without his performing any of the duties of his office that is a matter of concern only to the people of that County and the Sheriff and we are unable to see wherein appellants are thereby affected. *Dukes v. Jefferson Standard Life Insurance Co.,* 172 S. C., 502, 174 S. E., 463.

This Court is of the opinion that all exceptions should be and are hereby overruled and the judgment of the Circuit Court is hereby affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.