16392

ETIWAN FERTILIZER CO. v. SOUTH CAROLINA TAX COMMISSION

(60 S. E. (2d) 682)

*Thomas, Cain & Lumpkin,* of Columbia, and *Mr. E. D. Smith, Jr.,* of Counsel, of Columbia *for Appellant,*

356

*Messrs. John M. Daniel, Attorney General, and Claude K. Wingate, Assistant Attorney General,* of Columbia, *for Respondent,*

July 28, 1950.

FISHBURNE, Justice.

This action was brought to recover the sum of $5,979.11, representing a deficiency income tax assessed against appellant by the South Carolina Tax Commission for its fiscal year ending June 30, 1945.

Appellant contends that the additional tax was illegally exacted for the reason that it was entitled to charge off, as a bad debt during such taxable year, the indebtedness hereinafter referred to. The tax in question was paid under protest, and thereafter this action was instituted for its recovery pursuant to the provisions of Section 2449, subsection 7 of the Code.

Respondent by its answer denied that the amount charged off was the uncollectible portion of the debt due appellant, or that it was ascertained to be worthless and charged off on its books prior to June 30, 1945, as required by law.

The portion of the statute applicable to the issue presented, Section 2449, sub-section 7, reads as follows: "Debts ascertained to be worthless and actually charged off the books of the taxpayer within the income year."

Respondent concedes that the actual entry does not have to be made upon the books of the taxpayer on or before the last day of the year involved, but may be done at any reasonable time thereafter, provided the debt has been ascertained to be worthless before the expiration of the taxable year.

The Master to whom the cause was referred, found and reported, as contended by appellant, that the quoted portion of the statute should be construed to mean that the taxpayer could estimate, approximate, or reasonably ascertain before the close of the taxable year, the amount claimed to be a bad debt and uncollectible. He held that the amount of the claimed worthless debt did not have to be ascertained with accuracy or precision before the end of the taxable year, and recommended that respondent be ordered to pay appellant the amount demanded. However, before reaching this conclusion, the Master determined that the word "ascertain", in accordance with its usual dictionary definition, means "to make a thing certain to the mind, to free from obscurity or doubt." It appears to us that the definition of the word "ascertain" and the decision reached by the Master present an inconsistency.

The cause came on to be heard before the circuit court upon exceptions filed by the Tax Commission, and that court held that the applicable statute hereinabove quoted is clear and unambiguous. The statute was construed to mean that the amount of the bad debt claimed could not be an estimate or an approximation; that such amount must be ascertained or determined accurately prior to the closing of the books for the taxable year ending June 30, 1945. Accordingly it was ordered that the complaint be dismissed.

The only testimony offered by the appellant consisted of two depositions. No evidence was offered by the respondent. Hence we look mainly to the testimony of Mr. W. R. Sullivan to decide the issue as to whether or not the bad debt claimed was legally ascertained before the close of appellant's fiscal year.

Prior to November, 1944, Shipyard River Terminal Company, of Charleston, was indebted to appellant in the sum of $187,186.94. Some time during the month of November, the Terminal Company suffered a fire loss which destroyed substantially all of its physical property, in consequence of which it had to cease doing business. The appraised value of its physical assets after the fire, amounted to $55,934.65, which represented the net worth of the company after taking into consideration all obligations except the amount due the appellant. In addition to the appraised value of the physical assets, the Terminal Company held a policy designated as use and occupancy insurance carried on the property destroyed by fire, which policy was turned over to appellant.

The respondent extended the time for the filing of appellant's income tax return from June 30, 1945 to September 30, 1945. In preparing its income tax return, which was filed some time in September, 1945, appellant believed that it could collect from the insurance company on this policy, by way of compromise, the net amount of $20,000.00, which figure when added to the appraised value of the physical assets would bring the total amount to $75,934.65. This latter amount subtracted from the total indebtedness of $187,186.94 left a claimed uncollectible bad debt of $111,-252.29, which was entered in the return.

Mr. Sullivan who testified, was not only the president of the Shipyard River Terminal Company, but was also vice president of appellant, Etiwan Fertilzer Company, and he negotiated the final settlement with the insurance company for use and occupancy insurance.

The primary question to be decided on this appeal is whether or not Mr. Sullivan, as an officer of appellant, ascertained prior to June 30, 1945 what its loss would be, which loss was of course directly affected by and dependent upon the amount to be collected from the insurance company. On direct and on cross examination, Mr. Sullivan stated time and again that on June 30, 1945, the end of ap-

pellant's taxable year, and even as late as September of that year, he had not determined or ascertained what appellant's loss would be, for the reason that he had gotten a tentative offer of $25,000.00 from the insurance company, which he did not accept because he hoped by continued negotiation to secure a larger settlement. It may reasonably be inferred that no final settlement was reached with the insurance company until after September, 1945, when Mr. Sullivan for appellant, accepted $25,000 by way of a compromise settlement.

However, the $25,000.00 finally paid by the insurance company was not used in the preparation of appellant's income tax return, because appellant estimated that if at a later day it accepted this figure, tentatively offered, the cost of collection would be approximately $5,000.00. Hence, in making its tax return for the fiscal year ending June 30, 1945, appellant used the figure $20,000.00 as the estimated net amount to be realized from the use and occupancy insurance. It subsequently developed that appellant collected about $21,000.00. The loss was not definitely determined until after the books were closed for the taxable year.

We agree with the judgment of the circuit court that under the applicable statute there must be a definite ascertainment of the amount of the bad debt to be charged off before the company's books are closed for the taxable year. The South Carolina Tax Commission has consistently given the statute this construction.

We have held in many cases that where the construction of the statute has been uniform for many years in administrative practice, and has been acquiesced in by the General Assembly for a long period of time, such construction is entitled to weight, and should not be overruled without cogent reasons. *City of Spartanburg v. Leonard*, 180 S. C. 491, 186 S. E. 395; *U. S. Rubber Products v. South Carolina Tax Comm.*, 189 S. C. 386, 1 S. E. (2d) 153; *Harling v. Board of Com'rs of Police Insurance and Annuity Fund*, 205 S. C. 319, 31 S. E. (2d) 913.

We have likewise held that in the construction of a statute, if its terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it fairly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense. *Weston v. Board of Com'rs of Police Insurance and Annuity Fund,* 196 S. C. 491, 13 S. E. (2d) 600; *Windham v. Pace,* 192 S. C. 271, 6 S. E. (2d) 270. The prime object, of course, in the construction of a statute is to ascertain and give effect to the legislative intent.

According to Webster, "ascertain" is to make sure or certain; to free from obscurity or doubt, to determine. Whereas, "estimate" means "to fix the worth or value in a general way; to calculate approximately." Obviously the words are substantially opposite in meaning. It seems very clear to us that the legislature in the use of the word "ascertain," had no intention to ascribe to that word any meaning different from that found in the dictionary. The clear intent to be gathered from the statute is, that the amount of the bad debt or claim should be actuallly determined before the company's books are closed, and not left to guess work.

Any other interpretation would mean that a taxpayer could at any time prior to the end of the taxable year, or later, determine in his own mind that he would suffer a loss on account of certain bad debts. And loosely estimating what he thought the loss might be, charge off the amount so arrived at. This in our opinion would lead to an administrative confusion never intended by the general assembly.

We have no case in point in this state. Appellant relies upon numerous Federal decisions in the district and circuit courts, and opinions rendered by the Federal Board of Tax Appeals construing the Federal statute. but after a careful consideration of these authorities, we do not think they are applicable here; nor, under the facts of this case, do they support appellant's contention.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.