694 S.E.2d 525

**MEDIA GENERAL COMMUNICATIONS, INC., and Media General Broadcasting of South Carolina Holdings, Inc., Respondents,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant.**

**Media General, Inc., Respondent,**

v.

**South Carolina Department of Revenue, Appellant.**

**No. 26828.**

Supreme Court of South Carolina.

Heard March 16, 2010.

Decided June 14, 2010.

Lynn M. Baker, Managing Counsel, and Ronald W. Urban, Chief Counsel, both of South Carolina Department of Revenue, of Columbia, for Appellant.

Burnet R. Maybank, III, of Nexsen Pruet, of Columbia, for Respondents.

Justice BEATTY.

The appellant, the South Carolina Department of Revenue ("Department"), contends the Administrative Law Court ("ALC") erred in construing S.C.Code Ann. § 12–6–2320(A)(4) as allowing the three multistate corporations named herein to use the combined entity method in apportioning their income and determining their South Carolina corporate income tax liability. We affirm.

## I. FACTS

This taxation case involves three corporations that are challenging the accounting procedure applied by the Department in calculating their corporate income taxes due in South Carolina. The taxes were based on income earned from intangible assets used in this state—royalty receipts from the use of trademarks, trade names, and licenses. The parties stipulated to the following facts.

Media General, Inc. ("Media General"), a Virginia corporation, is an independent, publicly-owned communications company headquartered in Richmond, Virginia. Media General

maintains its commercial domicile in Virginia and is subject to income tax there. Media General is the parent company in a consolidated group of communications companies situated primarily in the Southeast with interests in newspapers, television stations, and interactive media.

Media General owns all of the stock of Media General Communications, Inc. ("MG Communications"), a Delaware corporation that is domiciled in, and subject to income tax in, Virginia. MG Communications owns Media General Operations, Inc. ("MGO"), a Delaware corporation, which, in turn, owns Media General Broadcasting of South Carolina Holdings, Inc. ("MG Broadcasting"), a Delaware corporation domiciled in, and subject to income tax in, Virginia.[1]

Media General and its affiliates comprise a "unitary group," which as used herein is defined as a business in which there is a high degree of interrelationship and interdependence among related entities so that the value of the business as a whole exceeds the sum of its individual elements. Unitary groups generally share a unity of management, ownership, and control of operations resulting in unquantifiable flows of value among the related entities of the business. Media General and its affiliates operate converged media operations where television, newspaper, and online products and information are merged and leveraged off of each other.

The Department conducted a corporate income tax audit of Media General, MG Communications, and MG Broadcasting. During the audit period, both MG Broadcasting and MG Communications owned intangible assets utilized in MGO's multistate operations, including those operations conducted in South Carolina. These intangibles included licenses and other authorizations issued by the Federal Communications Commission ("FCC") for the operation of various television broadcasting affiliates, as well as trademarks for the stations and a Florence daily newspaper.

MG Communications and MG Broadcasting each licensed their intangible assets to Media General and charged Media General a flat royalty fee. Media General then sublicensed the intangibles to MGO and charged MGO a royalty fee. The

---

1. MGO is not a party to the current action.

revenues generated by MGO from its South Carolina broad-casting and publishing operations consisted mostly of advertising sales revenue.

Media General also had an Administrative Services Agreement with MG Communications and MG Broadcasting. The license agreements, sublicense agreements, and the Administrative Services Agreement were all signed on behalf of each entity by the same individual who is a corporate officer for each company.

After evaluating the effects of the royalty income generated by the intangible assets, the Department issued assessments for the three taxpayers at issue in this case, Media General, MG Communications, and MG Broadcasting (collectively, "Taxpayers").

In determining these assessments, the Department utilized the separate entity apportionment method, which is the standard apportionment method used in South Carolina for apportioning income among multistate, related business entities. The ALC noted that this method "considers each entity having nexus with the taxing state as a separate and distinct entity, even if it is part of a unitary business."

This is in contrast to the combined entity apportionment method, which the parties have stipulated is defined for this matter as an accounting method whereby each member of a group carrying on a unitary business computes its individual taxable income attributable to activities in South Carolina by taking a portion of the combined net income of the group through the utilization of combined apportionment factors. The combined income of the unitary group is not computed for the purpose of taxing such income, but rather as a basis for determining the portion of income from the entire unitary business attributable to sources within South Carolina that is derived by members of the group subject to South Carolina's taxing jurisdiction. One of the purposes of this method is to capture the many subtle and largely unquantifiable transfers of value that take place among related companies of a single business enterprise.

South Carolina's statutory apportionment methodology as utilized in the Department's assessments and the calculation of taxes on returns filed during the audit period results in income

taxes and license fees for Media General, MG Broadcasting, MG Communications, and MGO in the amount of $3,758,320. In contrast, the combined apportionment methodology results in income taxes and license fees for these same entities in the amount of $863,179.

The Department's application of South Carolina's standard apportionment formula utilized in its proposed assessments does not fairly represent petitioners' business activities in South Carolina, thus resulting in a statutory distortion of petitioners' activities within South Carolina.

The corporations timely filed protests to the assessments and asked the Department to use the combined entity apportionment methodology as an alternative method to the separate entity apportionment method to fairly represent their business activities in South Carolina pursuant to S.C.Code Ann. § 12–6–2320(A)(4). This statute provides that if the allocation and apportionment provisions do not fairly represent the taxpayer's business activities in South Carolina, the taxpayer may petition for, or the Department may require, if reasonable, the employment of any other method to effectuate the equitable allocation and apportionment of the taxpayer's income.

The Department issued a Final Agency Determination upholding the proposed assessments. Although the Department agreed that the combined apportionment methodology fairly represents the corporations' business activities in South Carolina during the audit period, as compared to South Carolina's standard apportionment methodology, the Department declined the group's petition to use the combined apportionment method pursuant to section 12–6–2320(A)(4) on the ground that the Department has no authority to either grant a petition for, or require, the use of the combined apportionment method.

Media General filed this matter for a contested case hearing before the ALC. The parties filed cross-motions for summary judgment. The ALC granted Media General's motion for summary judgment, and denied the Department's motion. The ALC found the allowance of the use of "any other method" as provided by section 12–6–2320(A)(4) of the South Carolina Code encompasses the combined entity apportion-

ment method advocated by Media General and that this method should be applied in this case. The Department appeals from the ALC's ruling.

## II. STANDARD OF REVIEW

Rule 56(c) of the South Carolina Rules of Civil Procedure provides a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *see also* ALC Rule 68 (stating the South Carolina Rules of Civil Procedure may be applied in proceedings before the ALC to resolve questions not addressed by the ALC rules). A reviewing court may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law. S.C.Code Ann. § 1–23–610(B)(a), (d) (Supp.2009).

## III. LAW/ANALYSIS

On appeal, the Department contends the ALC erred in construing section 12–6–2320(A)(4) of the South Carolina Code as allowing Taxpayers to use the combined entity method in apportioning their South Carolina corporate income tax. The Department asserts the ALC ignored South Carolina case law when it determined that combined entity apportionment was contemplated by section 12–6–2320(A)(4), there is a split of authority in other states that have adopted similar provisions, and the Department's longstanding administrative interpretation and application of the statute is entitled to deference.

### A. South Carolina Corporate Income Tax Provisions

In South Carolina, "[a]n income tax is imposed annually at the rate of five percent on the South Carolina taxable income of every corporation ... transacting, conducting, or doing business within this State or having income within this State, regardless of whether these activities are carried on in intrastate, interstate, or foreign commerce." S.C.Code Ann. § 12–6–530 (2000).

A corporation's taxable income in South Carolina is computed using the Internal Revenue Code with modifications as provided by South Carolina law, and this amount is "subject to allocation and apportionment as provided in Article 17 of this chapter." Id. § 12–6–580.

Article 17, entitled "Allocation and Apportionment," provides certain income that is not related to business activity in South Carolina must be directly allocated to a taxpayer and is not subject to apportionment. See id. §§ 12–6–2220, –2230 (2000 & Supp.2009). All income remaining after allocation is apportioned in accordance with the general apportionment statute, section 12–6–2250, or one of the special apportionment formulas. Id. § 12–6–2240 (Supp.2009).

"If *a taxpayer* is transacting or conducting business partly within and partly without this State, the South Carolina income tax is imposed upon a base which reasonably represents the proportion of the trade or business carried on within this State." Id. § 12–6–2210(B) (2000) (emphasis added).

In the current appeal, the Department utilized a standard statutory apportionment method based on gross receipts since the income in question was from intangible business assets. The gross receipts method requires the taxpayer to "apportion its ... net income using a fraction in which the numerator is gross receipts from within this State during the taxable year and the denominator is total gross receipts from everywhere during the taxable year." Id. § 12–6–2290 (Supp.2009).

The statute in contention here, section 12–6–2320(A), provides for alternative methods of allocation and apportionment when the standard provisions in the South Carolina Code do not fairly represent the taxpayer's business activity in South Carolina:

(A) If the allocation and apportionment provisions of this chapter do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

(1) separate accounting;

(2) the exclusion of one or more of the factors;

(3) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in the State; or

(4) *the employment of any other method* to effectuate an equitable allocation and apportionment of the taxpayer's income.

Id. § 12–6–2320(A) (2000) (emphasis added). Section 12–6–2320(A) of the South Carolina Code is identical to the Uniform Division of Income for Tax Purposes Act (UDITPA), section 18, Equitable Adjustment of Formula, and was passed by the South Carolina General Assembly in 1995.

Taxpayers petitioned under section 12–6–2320(A)(4) for the use of "any other method" of apportionment, and they have specifically requested that the Department apply the combined entity method in apportioning their income for South Carolina tax purposes. The Department stipulated that the standard statutory method it used did not fairly represent Taxpayers' income, and that the combined entity apportionment method did fairly measure Taxpayers' business activity in South Carolina, but it denied the petition based on its determination that it was not authorized under South Carolina law to apply the combined entity apportionment method.

## B.  Combined Entity Versus Single Entity Apportionment Methods

The ALC observed that the states typically apply one of two apportionment methods for multistate businesses. The first is the separate entity apportionment method, which considers each entity having some nexus with the taxing state as a separate entity, even if it is part of a unitary business. The second method, known as the combined entity apportionment method, considers the entities that are part of the unitary business such that the numerator represents all of the unitary entities' gross receipts from within the taxing state and the denominator consists of all of the unitary entities' gross receipts from everywhere.

The ALC compared the use of the separate entity apportionment method with the use of the combined entity apportionment method in calculating a corporation's income tax due in South Carolina:

To determine the tax of a related entity of a multistate corporation in South Carolina using the separate entity apportionment method, each individual entity must deter-

mine a ratio to apply against its taxable income in South Carolina to arrive at a net taxable income. The ratio is determined by dividing each individual entity's gross receipts in this State or the sum of each individual entity's property, payroll and sales within this State, by each individual entity's gross receipts everywhere or the sum of each individual entity's property, payroll and sales everywhere. It then applies this ratio to the entity's taxable income in South Carolina to determine its net taxable income. The corporate tax rate (5%) is then applied to ascertain the tax owed this State.

To determine the tax of a related entity or related entities of a multistate corporation in South Carolina by using the combined entity apportionment method, the individual entity or all related entities (if more than one taxpayer is transacting business in this state), must determine a ratio to apply against its/their taxable income to arrive at its/their net taxable income in South Carolina. The ratio is determined by dividing the gross receipts of all the related entities of the multistate corporation in South Carolina or all the related entities['] property, payroll, and sales from within South Carolina, by all the related entities['] gross receipts from everywhere or the related entities['] property, payroll, and sales from everywhere. The taxpayer (individual entity) then applies this ratio to the entity's taxable income in South Carolina to determine its net taxable income. The corporate tax rate (5%) is then applied to ascertain the tax owed this State.

The parties have stipulated that South Carolina uses the separate entity apportionment method as its standard method to determine the taxable income related to intangible property of multistate businesses transacting or doing business in South Carolina. The parties have further stipulated that the standard apportionment formulas do not fairly represent the South Carolina income of Taxpayers; therefore, section 12–6–2320(A) is applicable and the only question is the interpretation of the statute and whether it permits the combined entity apportionment method that Taxpayers request here.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Charleston County Sch. Dist. v. State Budget & Control Bd.,*

313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). "The determination of legislative intent is a matter of law." *Eagle Container Co. v. County of Newberry*, 379 S.C. 564, 568, 666 S.E.2d 892, 894 (2008) (quoting *Charleston County Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995)).

"Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). The best evidence of intent is in the statute itself: "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03, at 94 (5th ed.1992)).

If a statute's "terms are clear and unambiguous, they must be taken and understood in their plain, ordinary and popular sense, unless it fairly appears from the context that the Legislature intended to use such terms in a technical or peculiar sense." *Etiwan Fertilizer Co. v. South Carolina Tax Comm'n*, 217 S.C. 354, 360, 60 S.E.2d 682, 684 (1950). "The prime object, of course, in the construction of a statute is to ascertain and give effect to the legislative intent." *Id.*

The ALC found section 12–6–2320(A)(4) was clear on its face and that the legislative intent expressed therein was to allow the use of "any other method" to apportion income where the standard statutory formulas resulted in an unfair apportionment of a taxpayer's business income in South Carolina.

The Department disagrees and argues section 12–6–2320(A)(4) should not be construed to allow the combined entity apportionment method based on the legislative intent expressed in the corporate tax statutes requiring the filing of tax returns by a single entity. Specifically, the South Carolina Code defines "taxpayer" as including "an individual, trust, estate, partnership, association, company, *corporation,* or any other entity subject to the tax imposed by this chapter or required to file a return." S.C.Code Ann. § 12–6–30(1) (2000) (emphasis added). The Department notes the definition re-

fers to a single corporation as a taxpayer and thus to separate filing requirements for each entity. Consequently, this definition must be used for the meaning of "taxpayer" as it appears in section 12–6–2320(A) and it limits the statute's application to a separate entity.

In *Coca Cola Co. v. Department of Revenue,* 271 Or. 517, 533 P.2d 788 (1975), the Supreme Court of Oregon rejected a similar argument, finding the use of "taxpayer" in the singular did not prevent the Department of Revenue from applying combined reporting. The court stated: "While it is true, as plaintiff points out, that the statute speaks of taxpayer in the singular, this is no bar. We note that the prior statute also spoke in the singular. Yet in [*Zale–Salem, Inc. v. Tax Comm'n,* 237 Or. 261, 391 P.2d 601 (1964)] we approved combined reporting." *Id.* at 793. The court observed that "the fact that the Uniform Act does not specifically require (the combined method of reporting for a multicorporate business) constitutes no barrier to its adoption by the Multistate Tax Commission and the various member states." *Id.* at 793 n. 4 (alteration in original) (citation omitted).

The Department also contends the combined entity apportionment method should not be allowed because it is not expressly provided for in section 12–6–2320 and the Department has never applied the combined entity apportionment method. The Department contends the ALC erred in failing to give deference to the agency's own interpretation. The Department further contends that use of the method is contrary to existing South Carolina law.

The ALC acknowledged that a court generally gives deference to an administrative agency's interpretation of an applicable statute or regulation. However, the ALC found the Department's interpretation was contrary to the plain language of the statute and was not entitled to deference.

■ An agency's long-standing interpretation of a statute is usually entitled to be given deference and should not be overruled by a reviewing court in the absence of cogent reasons, but the interpretation will not be sustained if it contradicts a statute's plain language. *Etiwan Fertilizer Co.,* 217 S.C. at 359, 60 S.E.2d at 684. We find the ALC was not required to defer to the Department's interpretation in this instance because it was contrary to the plain language of the

statute. See *Brown v. Bi–Lo, Inc.*, 354 S.C. 436, 440, 581 S.E.2d 836, 838 (2003) ("We recognize the Court generally gives deference to an administrative agency's interpretation of an applicable statute or its own regulation. Nevertheless, where, as here, the plain language of the statute is contrary to the agency's interpretation, the Court will reject the agency's interpretation." (citation omitted)).

The Department also asserts the ALC's ruling ignored existing South Carolina case law. The Department cites to *NCR Corp. v. South Carolina Tax Commission*, 304 S.C. 1, 402 S.E.2d 666 (1991) (*NCR I*) and to *NCR Corp. v. South Carolina Tax Commission*, 312 S.C. 52, 439 S.E.2d 254 (1993) (*NCR II*), arguing these cases "remain good [law] for the proposition that South Carolina is a separate entity taxing state."

In *NCR I*, we noted that "[e]ach of the statutory sections defining the ratios of property, payroll, and sales use the singular word 'taxpayer.'" *NCR I*, 304 S.C. at 5, 402 S.E.2d at 669. We held that "subsidiary payroll, sales, and property . . . should generally not be considered under our statutory scheme." *Id.* at 6, 402 S.E.2d at 669.

In *NCR II*, NCR "contend[ed] the royalties and interest income paid by all of its forty-four foreign subsidiaries should be combined and then divided by the combined income of all the subsidiaries to determine the proportionate contribution of sales, property, and payroll by foreign subsidiaries." *NCR II*, 312 S.C. at 56, 439 S.E.2d at 256. Under this calculation, the gains of the various subsidiaries would be offset by the losses of others. *Id.* In contrast, the Tax Commission asserted "the trial court correctly made the calculation separately for each subsidiary and added each separate amount to the denominator of the apportionment formula." *Id.* This Court stated that "[s]ubsidiaries are treated as separate entities for tax purposes," and held the "Tax Commission's method of calculation is the better approach since it is consistent with general tax principles." *Id.*

The ALC found these cases were not controlling as they were decided prior to the enactment of section 12–6–2320, which clearly and specifically allows for the use of "any other method" to fairly represent a taxpayer's income when the standard apportionment formulas provided by statute do not

fairly represent the taxpayer's business activity in South Carolina. The ALC determined this was a "relief provision" enacted by the South Carolina General Assembly that authorizes the use of the combined entity apportionment method. The ALC concluded "[t]he Department's interpretation would thwart legislative intent clearly expressed in the general allocation and apportionment statutes, would deny Taxpayers the equitable relief intended by the legislature when it enacted § 12–6–2320(A), and would leave Taxpayers with an unreasonable and arbitrary apportionment of their taxable income in this state."

The Department acknowledges that the standard apportionment statutes result in statutory distortion of Taxpayers' incomes and taxes. However, the Department asserts that other methods, such as changing the factors to be considered in the apportionment ratios, may be used to correct the problems caused by application of the standard apportionment statutes. Despite its argument, to date the Department has not recalculated Taxpayers' income and taxes using any alternative method that it believes would fairly apportion Taxpayers' income from business activities in South Carolina.

We agree with the ALC that the legislature enacted section 12–6–2320 as a relief mechanism, and hold that the plain language of subsection (A)(4) clearly authorizes the Department to use "any other method" to effectuate an equitable apportionment of the taxpayer's income, including the combined entity apportionment method. The authority cited by the Department predates the legislative enactment and therefore is not controlling on this issue.

We emphasize that, as a general rule, the Department need not automatically use the method requested by a taxpayer, as it has the discretion to select an alternative method that fairly measures the taxpayer's income in South Carolina. In this case, however, the Department never recalculated Taxpayers' incomes using any other alternative method, and the Department stipulated that use of the combined entity apportionment method proposed by Taxpayers does result in a fair computing of Taxpayers' business activities in South Carolina. Accordingly, we uphold the ALC's determination that the combined entity apportionment method should be utilized by the Department for the tax period in question. The combined entity

apportionment method is merely a mechanism for approximating the income attributable to the corporations that comprise a unified business, but this does not change the fact that the entities will be reporting the taxes due for each entity.

## V.  CONCLUSION

The Department concedes the standard apportionment formulas allowed under South Carolina law result in a statutory distortion of Taxpayers' incomes and that the combined entity apportionment method would fairly represent their business activities in South Carolina.  We agree with the ALC that the legislature has placed no explicit limitation on the alternative methods that may be used under section 12–6–2320(A)(4), and consequently we affirm the ALC's ruling that the Department is authorized to use the combined entity apportionment method.  Although the Department has the discretion to select an alternative method, the ALC has ordered in this case that the method be applied and we affirm this determination as the Department has not established that another method would be more appropriate.  This ruling is limited to the tax period in question, and the Department may employ any other appropriate alternative method for future tax years.

**AFFIRMED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.