785 S.E.2d 622

The STATE, Respondent,

v.

Anthony BAILEY, Appellant.

Appellate Case No. 2014–001938.
No. 5399.

Court of Appeals of South Carolina.

Heard Feb. 10, 2016.
Decided April 6, 2016.
Rehearing Denied May 16, 2016.

Appellate Defender, Kathrine Haggard Hudgins, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, Susannah Rawl Cole, both of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for respondent.

346

WILLIAMS, J.

Anthony Bailey appeals his conviction for threatening the life of a public official, arguing the circuit court erred in finding a mental health professional employed by the South Carolina Department of Mental Health (the Department) was a public official, rather than a public employee, under section 16-3-1040 of the South Carolina Code (2015). We reverse.

**FACTS/PROCEDURAL HISTORY**

This appeal arises out of an incident that occurred on August 28, 2013, at the Al Cannon Detention Center located in Charleston County, South Carolina. Bailey, who suffers from bipolar disorder, was being held in the Charleston County jail for municipal level offenses. The victim in this case, Amy Cradock, was asked to assess Bailey based upon alleged threats he made as well as his actions toward detention officers that day. Cradock is employed by the Charleston/Dorchester Mental Health Center, a subsidiary of the Department, and serves as a designated mental health examiner for the jail.

When Cradock received the referral, she learned that Bailey had threatened to kill a detention officer upon release. Thus, Cradock visited Bailey to assess whether he needed to be hospitalized for homicidal ideations. According to Cradock, Bailey became very agitated when she arrived at his cell. Cradock testified that Bailey "started making some very negative statements about the mental health center, and stated that he intended to go shoot up the health center and kill everyone in the mobil [sic] crisis." Bailey further told Cradock "if [she] didn't get away from his door fast enough, [she] would be added to the list." As Cradock was walking away, Bailey said, "I'm adding you to the list anyway; I'm going to kill you too."

A Charleston County grand jury indicted Bailey for threatening the life of a public official on February 3, 2014. Following a bench trial on September 4, 2014, the circuit court found Bailey guilty and sentenced him to five years' imprisonment, suspended upon the service of eighteen months, with five years' probation. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins,* 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). "Thus, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous." *State v. Blakney,* 410 S.C. 244, 249, 763 S.E.2d 622, 625 (Ct.App.2014). The interpretation of a statute, however, is a question of law subject to de novo review. *State v. Whitner,* 399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012). The appellate court is free to decide questions of law with no particular deference to the circuit court. *Lambries v. Saluda Cty. Council,* 409 S.C. 1, 7–8, 760 S.E.2d 785, 788 (2014) (quoting *Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 466, 636 S.E.2d 598, 605 (2006)).

## LAW/ANALYSIS

Bailey argues the circuit court erred in finding Cradock was a public official, rather than a public employee, within the meaning of section 16–3–1040. We agree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the [General Assembly]." *Charleston Cty. Sch. Dist. v. State Budget & Control Bd.,* 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993). "The determination of legislative intent is a matter of law." *Lambries,* 409 S.C. at 10, 760 S.E.2d at 789 (quoting *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue,* 388 S.C. 138, 148, 694 S.E.2d 525, 529 (2010)).

"What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992)). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Id.* "If a statute's 'terms are clear and unambiguous, [then] they must be taken and understood in their plain, ordinary[,] and popular sense, unless it fairly appears from the context that the [General Assembly] intended to use such terms in a technical or peculiar sense.' "

*Media Gen. Commc'ns,* 388 S.C. at 148, 694 S.E.2d at 530 (quoting *Etiwan Fertilizer Co. v. S.C. Tax Comm'n,* 217 S.C. 354, 360, 60 S.E.2d 682, 684 (1950)).

"A statute as a whole must receive practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers." *Lambries,* 409 S.C. at 10, 760 S.E.2d at 789–90 (quoting *Sparks v. Palmetto Hardwood, Inc.,* 406 S.C. 124, 128, 750 S.E.2d 61, 63 (2013)). "In interpreting a statute, the language of the statute must be read in a sense that harmonizes with its subject matter and accords with its general purpose." *Id.* at 10, 760 S.E.2d at 790 (quoting *Sparks,* 406 S.C. at 128, 750 S.E.2d at 63).

> Section 16–3–1040, in pertinent part, provides the following: (A) It is unlawful for a person knowingly and willingly to deliver or convey to a public official . . . any letter or paper, writing, print, missive, document, or electronic communication or verbal or electronic communication which contains a threat to take the life of or to inflict bodily harm upon the public official . . . or members of his immediate family if the threat is directly related to the public official's . . . professional responsibilities.
>
> (B) It is unlawful for a person knowingly and willingly to deliver or convey to a public employee a letter or paper, writing, print, missive, document, or electronic communication or verbal or electronic communication which contains a threat to take the life of or to inflict bodily harm upon the public employee or members of his immediate family if the threat is directly related to the public employee's professional responsibilities.

The statute defines a *public official* as "an elected or appointed official of the United States or of this State or of a county, municipality, or other political subdivision of this State." § 16–3–1040(E)(1). A *public employee,* on the other hand, is defined as "a person employed by the State, a county, a municipality, a school district, or a political subdivision of this State." § 16–3–1040(E)(2).

The dispositive question in this case is whether a designated examiner is considered a public official under South Carolina law. Section 44–23–10(4) of the South Carolina Code (Supp. 2015) defines a *designated examiner* as "a physician licensed

by the Board of Medical Examiners of this State or a person registered by the [D]epartment as specially qualified, under standards established by the [D]epartment, in the diagnosis of mental or related illnesses." The Department's regulations—authorized by statute and subject to the approval of the General Assembly—provide further guidance regarding designated examiners:

A. For the purpose of carrying out the provisions of the laws relating to the commitment of mentally ill persons, the South Carolina Mental Health Commission hereby establishes the following qualifications needed for persons to act as designated examiners:

. . . .

(5) Any mental health professional as listed in subsections (A)(1) through (4) who has the appropriate license and education, who has at least one year of intensive full-time experience working with committed patients in a unit of a Department of Mental Health psychiatric hospital, who is certified by the chief of professional services and the director of the facility as being competent and qualified to serve as a designated examiner, and who is approved by the Department of Mental Health Office of Quality Assurance—Standards, Advocacy and Monitoring *may be appointed as designated examiner* for examinations and hearings held within that facility.

S.C.Code Ann. Regs. § 87–1 (2012) (emphasis added).

■ Here, Bailey concedes Cradock was appointed as a designated examiner and notes that "all other employees" within the Department are appointed in some way as well. Thus, we accept that Cradock was appointed to the designated examiner position. Our inquiry for purposes of section 16–3–1040, however, does not end here because the fact that Cradock was "appointed" to her position does not—by itself—qualify her as a public official. We also look to the common law to determine whether a designated examiner is a public official. *See State v. Bridgers*, 329 S.C. 11, 14, 495 S.E.2d 196, 197–98 (1997) ("The General Assembly is presumed to be aware of the common law, and where a statute uses a term that has a well-recognized meaning in the law, the presump-

tion is that the General Assembly intended to use the term in that sense.").

Our supreme court has held a public officer is "[o]ne who is charged by law with duties involving an exercise of some part of the sovereign power, either small or great, in the performance of which the public is concerned, and which are continuing, and not occasional or intermittent." *Sanders v. Belue*, 78 S.C. 171, 174, 58 S.E. 762, 763 (1907). "Conversely, one who merely performs the duties required of him by persons employing him under an express contract or otherwise, though such persons be themselves public officers, and though the employment be in or about a public work or business, is a mere employ[ee]." *Id.*

■ In distinguishing between public officers and public employees, a court must look at whether (1) the position was created by the General Assembly; (2) the qualifications for appointment of the position are established by law; (3) "the duties, tenure, salary, bond, and oath are prescribed or required" by law; and (4) the person "occupying the position is a representative of the sovereign." *Bridgers*, 329 S.C. at 14, 495 S.E.2d at 198 (quoting *State v. Crenshaw*, 274 S.C. 475, 478, 266 S.E.2d 61, 62 (1980)). "No single criterion is dispositive and not all the criteria are necessary to find that an individual is a public officer." *Id.*

Nevertheless, our supreme court has noted "the greater the duty to the public at large, the more likely it is that the individual will be a public official." *Id.* at 15, 495 S.E.2d at 198 (quoting *State v. Thrift*, 312 S.C. 282, 309, 440 S.E.2d 341, 356 (1994)).

■ Regarding the first factor, we find the designated examiner position was created by the General Assembly. *See* S.C.Code Ann. § 44–23–10(4) (defining a designated examiner as "a physician licensed by the Board of Medical Examiners of this State or a person registered by the [D]epartment as specially qualified, under standards established by the [D]epartment, in the diagnosis of mental or related illnesses"). Moreover, as to the second factor, we find the qualifications for the position are established by law. *See* S.C.Code Ann. Regs. § 87–1 (setting forth "the qualifications needed for persons to act as designated examiners").

Turning to the third factor, however, we find the State failed to prove that a designated examiner's tenure, salary, bond, and oath are prescribed or required by law. Indeed, we are unable to find any such requirements in the relevant statutes or regulations. In our view, the duties of a designated examiner—although perhaps tangentially mentioned in section 44–23–220 of the South Carolina Code (Supp.2015)—are also not prescribed or required by law. Section 44–23–220 provides the following:

> No person who is mentally ill or who has an intellectual disability shall be confined for safekeeping in any jail. If it appears to the officer in charge of the jail that such a person is in prison, he shall immediately cause the person to be examined by two examiners designated by the Department of Mental Health or the Department of Disabilities and Special Needs, or both, and if in their opinion admission to a mental health or intellectual disability facility is warranted, the officer in charge of the jail shall commence proceedings pursuant to [s]ections 44–17–510 through 44–17–610, or [s]ection 44–21–90. If hospitalization is ordered, the person shall be discharged from the custody of the officer in charge of the jail and shall be admitted to an appropriate mental health or intellectual disability facility.

While the statute certainly mentions the role of a designated examiner in the process of ensuring mentally ill persons are not confined in South Carolina jails, the statute does not necessarily prescribe the duties of a designated examiner. Instead, section 44–23–220 focuses more on what the "officer in charge of the jail" is required to do. Thus, the State's failure to prove the third factor under *Bridgers* goes against a finding that Cradock—in her role as designated examiner—was acting as a public official.

Finally, with regard to the fourth factor, we find Cradock's position as a designated examiner did not require the exercise of sovereign power. Our review of the statutes and regulations reveals the "officer in charge of the jail" exercised the power of the sovereign, and that person's duties—not the designated examiner's—were the ones prescribed by law in section 44–23–220. Further, because Cradock did not act at all times as a designated examiner, but rather only did so in situations in which a hearing or examination was required, we

find her duties were intermittent. *See Sanders,* 78 S.C. at 174, 58 S.E. at 763 (noting a public official's duties involving the exercise of sovereign power "are continuing, and not occasional or intermittent"). The intermittent nature of her duties is highlighted by Cradock's testimony that she was not acting in her capacity as a designated examiner at the time Bailey allegedly threatened her. Therefore, the State's lack of evidence establishing the fourth factor likewise contravenes a finding that Cradock was a public official.

Although not all criteria are necessary to conclude an individual is a public official, we find the State's failure to prove the final two *Bridgers* factors significant. We are also unable to identify a sound policy basis for expanding the definition of "public official" to cover individuals in Cradock's position. Even though Cradock's duties were arguably in furtherance of public policy, as expressed by our General Assembly in the relevant statutes, these duties were not directed to the public at large. Instead, any duties Cradock owed in her role as a designated examiner were strictly to the patients whom she was called to examine to ensure compliance with section 44–23–220. *Cf. Bridgers,* 329 S.C. at 15, 495 S.E.2d at 198 (stating "the greater the duty to the public at large, the more likely it is that the individual will be a public official" (quoting *Thrift,* 312 S.C. at 309, 440 S.E.2d at 356)). In *Bridgers,* our supreme court expressed concern with treating various levels of law enforcement officers inconsistently for purposes of section 16–3–1040. 329 S.C. at 16, 495 S.E.2d at 199. Treating mental health examiners differently from law enforcement officers, however, does not raise the same concerns of inconsistency in applying the statute because these two positions are inherently dissimilar under the law. Consequently, we believe public policy concerns do not support a finding that Cradock was a public official.

In sum, the lack of evidence regarding the final two *Bridgers* factors—coupled with the absence of a sound policy justification for elevating a designated mental health examiner for the Department to the status of a public official—compels us to find Cradock's position does not come within the definition of a public official as set forth in section 16–3–1040. Based upon our review of the record, as well as the relevant authority, we hold that Cradock is a public employee. *Sanders,* 78

S.C. at 174, 58 S.E. at 763 (providing a public employee is "one who merely performs the duties required of him by persons employing him under an express contract or otherwise, though such persons be themselves public officers, and though the employment be in or about a public work or business").

Accordingly, because the circuit court erred in concluding Cradock was a public official for purposes of subsection 16–3–1040(A), we reverse Bailey's conviction. Simply put, Bailey was overcharged in this case.

## CONCLUSION

Based on the foregoing, Bailey's conviction for threatening the life of a public official is

**REVERSED.**

LOCKEMY and McDONALD, JJ., concur.