NATIONAL SERVICE INDUSTRIES, INC., PLAINTIFF v. HELEN A. POWERS, SECRETARY OF THE NORTH CAROLINA DEPARTMENT OF REVENUE, DEFENDANT

No. 8921SC572

(Filed 15 May 1990)

1. **Taxation § 23 (NCI3d)— administrative interpretation of taxing statutes—prima facie correct rule inapplicable**

     The "prima facie correct" standard of N.C.G.S. § 105-264 applies only to decisions by the Secretary of Revenue to initiate or propose regulations that modify, change, alter or repeal existing regulations and not to administrative interpretations of taxing statutes.

     **Am Jur 2d, State and Local Taxation § 8.**

2. **Taxation § 29 (NCI3d)— corporate income—business or nonbusiness—jury question**

     Whether corporate income is business or nonbusiness for income tax purposes is a question of fact, and the trial court properly submitted this issue to the jury.

     **Am Jur 2d, State and Local Taxation §§ 256-258.**

**3. Taxation § 30 (NCI3d)— income taxation—foreign multistate corporation—safe harbor lease in Georgia—apportionment of losses**

Losses sustained by a foreign multistate corporation under a "safe harbor" lease of electric generating equipment in Georgia are business losses that should be apportioned among all the states in which it does business rather than allocated exclusively to Georgia where the return on plaintiff's investment in the generating equipment is an integral part of plaintiff's business in that 15 percent to 20 percent of plaintiff's net worth was invested in the equipment, and the lease arrangement and its federal tax benefits constitute a means of gaining working capital and increasing cash flow for all of plaintiff's business operations.

**Am Jur 2d, State and Local Taxation §§ 294-298.**

APPEAL by defendant from judgment entered 6 December 1988 by *Judge James A. Beaty, Jr.* in FORSYTH County Superior Court. Heard in the Court of Appeals 22 December 1989.

This is a corporate tax case. Plaintiff is a foreign corporation doing business in North Carolina. In April of 1982 plaintiff entered into a "safe harbor lease" outside of the state of North Carolina. Pursuant to this arrangement plaintiff bought electric generating equipment located in Georgia and leased the equipment back to the company from which it was purchased. Under the federal Internal Revenue Code plaintiff has the benefit of energy tax credits, investment tax credits, and depreciation on the equipment that is being leased. The evidence tended to show that plaintiff used 15-20% of its net worth to obtain these tax benefits. These tax benefits increase plaintiff's cash flow "in the neighborhood of 80 to 90 million dollars" over the first four years of the lease. Due to plaintiff's centralized financial management this increased cash flow benefitted plaintiff's North Carolina operations. Plaintiff is not in the business of generating or selling electric power in North Carolina and does not manage the power equipment that is leased.

Plaintiff filed a North Carolina corporate income tax return for the fiscal year ending 31 August 1982 and apportioned as business income a net loss from this "safe harbor" lease. The Department of Revenue reclassified plaintiff's loss on the lease as nonbusiness income, reallocated the loss outside of North Carolina and eliminated

the property owned under the lease from the property factor of the apportionment formula. Consequently, an additional corporate income tax of $143,648.08, plus interest, was assessed. Plaintiff paid the additional tax (which, including interest, totaled $201,466.94) under protest. Thereafter, pursuant to G.S. 105-267, plaintiff claimed a refund. When its administrative efforts were unsuccessful, plaintiff brought suit for the return of the disputed tax paid. The jury found for the plaintiff. The trial court denied defendant's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Defendant appeals.

*Petree Stockton & Robinson, by G. Gray Wilson, James M. Iseman, Jr., and Timothy J. Ehlinger, for plaintiff-appellee.*

*Attorney General Thornburg, by Assistant Attorney General Newton G. Pritchett, Jr., for defendant-appellant.*

EAGLES, Judge.

Defendant makes two arguments on appeal. First, defendant asserts that the trial court erred in failing to instruct the jury on the "presumption of correctness of the defendant's interpretation of a taxing statute." Additionally, defendant argues that the trial court erred in denying the motion for judgment notwithstanding the verdict where defendant's motion for directed verdict should have been granted. Defendant asserts that the evidence was insufficient as a matter of law to justify a verdict for plaintiff. Plaintiff asserts a cross-assignment of error and argues that the trial court should have denied defendant's motion for judgment notwithstanding the verdict on the ground that defendant failed to state the basis for the motion. We disagree with defendant's arguments and affirm the judgment below. Therefore, we do not reach plaintiff's cross-assignment of error.

North Carolina's Corporate Income Tax Act (the Act), G.S. 150-130 to 150-132, is based on the Uniform Division of Income for Tax Purposes Act (UDITPA). The Act contains rules for determining the portion of a corporation's total income from a unitary multistate business which is attributable to this state and therefore subject to North Carolina's income tax. In general, the Act divides a multistate corporation's income into two groups: business and nonbusiness income. Business income is apportioned among the states in which the corporation does business according to a three-factor formula, G.S. 105-130.4(i), while nonbusiness income is allo-

cated to a specific jurisdiction. G.S. 105-130.4(h). Plaintiff argues that the losses it sustained under the safe harbor lease should be apportioned among the states in which it does business since the lease provides essential working capital for all of plaintiff's business operations. Defendant argues that these losses are non-business income and therefore should be allocated exclusively to Georgia, the location of the leased property.

## I. Jury Instruction.

[1] Defendant's first argument is that the trial court erred by refusing to instruct the jury on the "presumption of correctness" which should be accorded to defendant's interpretation of the taxing statute. Defendant argues that G.S. 105-264 provides that decisions of the Secretary, with regard to construction of the Act, are "prima facie correct." Defendant asserts that there was evidence that the assessment here was consistent with department policy, memorialized in an interoffice memo, for treatment of income from "safe harbor" leases. We are not persuaded and accordingly this assignment of error fails.

"When a party tenders a written request for a specific instruction which is correct and supported by evidence, the failure of the court to give the instruction in substance is error." *Property Shop Inc. v. Mountain City Inv. Co.*, 56 N.C. App. 644, 649, 290 S.E.2d 222, 225 (1982). Defendant relies on G.S. 105-264 which provides that "[s]uch decisions by the Secretary of Revenue shall be prima facie correct, and a protection to the officers and taxpayers affected thereby." Defendant's reliance is misplaced. A reading of the entire statute indicates that only the Secretary's decisions to initiate or propose regulations that modify, change, alter or repeal existing regulations are "prima facie correct." This "prima facie correct" standard does not apply to administrative interpretations. Since defendant has not proposed or promulgated a regulation regarding the treatment of these federal tax benefits in the context of state corporate income taxation, G.S. 105-264 does not apply. Accordingly, defendant's request for the instruction was properly denied.

## II. Judgment Notwithstanding the Verdict.

Defendant also argues that the trial court erred in denying her motion for judgment notwithstanding the verdict because the evidence was insufficient as a matter of law to support a verdict

in favor of plaintiff. Additionally, defendant argues that the determination of whether corporate income is business or nonbusiness income is a conclusion of law rather than a finding of fact and the trial court erred in submitting the issue to the jury. We disagree and overrule this assignment of error.

[2]    Initially, defendant argues that since the determination of whether income is business or nonbusiness is a question of law, the issue was improperly submitted to the jury. Defendant failed to assert this basis in support of the motions for directed verdict and judgment notwithstanding the verdict and cannot properly raise this issue here. However, we hold that whether certain income is business income for tax purposes is a question of fact and that the trial court properly submitted the issue to the jury.

A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, will be granted only if the evidence, considered in the light most favorable to the plaintiff, is insufficient as a matter of law to justify a verdict for the plaintiff. *Dailey v. Integon Gen. Ins. Corp.*, 75 N.C. App. 387, 395, 331 S.E.2d 148, 154, *disc. rev. denied*, 314 N.C. 664, 336 S.E.2d 399 (1985). In determining whether a directed verdict was properly denied, the movant is entitled to the benefit of every reasonable inference which may be drawn, and all evidentiary conflicts must be resolved in her favor. *See Penley v. Penley*, 314 N.C. 1, 10-11, 332 S.E.2d 51, 57 (1985).

G.S. 105-130.4(a)(1) provides that business income is "income arising from transactions and activity in the regular course of the corporation's trade or business and includes income from tangible and intangible property if the acquisition, management, and/or disposition of the property constitute integral parts of the corporation's regular trade or business operations." Defendant emphasizes that the evidence failed to show that plaintiff was regularly engaged in the business of leasing electric generating equipment, or that the acquisition, management, and/or disposition of electric power generating equipment constitute integral parts of plaintiff's regular trade or business operations. Defendant's emphasis is misplaced. The determinative question here is not whether plaintiff is in the business of generating electricity but whether the return on plaintiff's investment is an integral part of the plaintiff's trade or business. Here, the lease arrangement was a means of gaining working capital and increasing cash flow for all of plaintiff's business operations. This is certainly an "integral part" of plaintiff's busi-

ness. *See Champion Int'l Corp. v. Bureau of Revenue*, 88 N.M. 411, 540 P.2d 1300 (1975) (interest income earned on short-term investments is business income even though taxpayer was not in the investment business; usual and customary for taxpayer to invest excess capital in short-term investments); *Sperry & Hutchinson Co. v. Department of Revenue*, 270 Or. 329, 333, 527 P.2d 729, 731 (1974) (interest earned on short-term securities held to satisfy the needs for liquid capital in the trading stamp business are apportionable; interest on these securities qualifies as income "arising from transactions and activity in the regular course of the taxpayer's trade or business"). Although we recognize that not all investments made by corporations produce business income, under the facts of this case the benefits derived from the lease arrangement were properly determined to be business income. We especially note the amount of net worth originally invested (15 to 20 percent of plaintiff's net worth) to acquire the property and the substantial amount of cash flow ("80 to 90 million dollars") generated by the safe harbor lease arrangement.

[3] Defendant also argues that if plaintiff were to realize a profit on the "safe harbor" lease North Carolina could not constitutionally tax a portion of the profit because there is not a sufficient nexus between the lease activity and this state. Defendant's point is that plaintiff should not be able to take a deduction for losses incurred by an activity that this state could not tax if a gain were realized. While plaintiff's argument is correct in the abstract, it does not apply here. Plaintiff concedes that any gain realized on the lease arrangement would be apportioned among the states in which plaintiff does business, including North Carolina. The parties have stipulated that the several operating arms of plaintiff's business are joined by a "highly centralized" cash management and business operations system. From this record we conclude that plaintiff's conglomerate corporation is a unitary business for tax purposes. As the United States Supreme Court has stated, a prerequisite to finding a "unitary business is a flow of *value*, not a flow of goods." *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 178, 103 S.Ct. 2933, 2947, 77 L.Ed.2d 545, 561 (1983) (emphasis in original). Therefore, if a gain is realized it will be taxable (after apportionment) in North Carolina.

### III. Cross-assignment of Error.

Plaintiff cross-assigns as error that the trial court should have denied defendant's post-trial motions on grounds that the defendant

failed to state the basis for the motions. We need not address this cross-assignment of error because of our determination of defendant's assignments of error.

For the reasons stated, the decision of the trial court is affirmed.

Affirmed.

Judges PHILLIPS and ORR concur.