23606

EASTMAN KODAK COMPANY, Appellant v.
SOUTH CAROLINA TAX COMMISSION, Respondent.

(418 S.E. (2d) 542)

Supreme Court

*John C. Von Lehe, Jr.,* and *Stephen P. Groves,* both of *Young, Clement, Rivers & Tisdale,* Charleston, *for appellant.*

*Chief Deputy Atty. Gen. Joe L. Allen, Jr.,* and *Deputy Atty. Gen. Ray N. Stevens,* Columbia, *for respondent.*

Heard Feb. 5, 1992.

Refiled May 26, 1992.

CHANDLER, Justice:

We granted rehearing to reconsider our decision reported at Op. No. 23606 (S.C. filed March 30, 1992) Davis Adv. Sh. No. 9 at 12). The original opinion is withdrawn, and this amended opinion is substituted.

Kodak appeals an Order affirming the Tax Commission's denial of deductions derived from transactions known as "safe harbor leases."

We reverse.

## FACTS

Kodak is a multinational corporation doing business in South Carolina. In computing its 1985 South Carolina income tax, Kodak used an apportionment formula whereby its sales, payroll, and property in South Carolina were divided by its national net sales, payroll, and property.

In determining its national net income, Kodak made deductions for safe harbor lease transactions. These transactions, authorized by federal tax law,[1] allowed one corporation to transfer tax benefits to an other corporation in the following scenario: One corporation (the lessee) needs special assets, generally equipment, but cannot utilize the related investment tax credits and depreciation deductions. The Lessee corporation seeks a relationship with another corporation (the lessor, here Kodak), who makes an initial payment on the asset, then leases it back to the lessee. The lessee makes all other payments on the asset and retains legal title; however, the lessor utilizes the tax benefits associated with the asset. § 168(f)(8), I.R.C.

Between 1981 and 1985, Kodak entered into 34 safe harbor leases at an acquisition cost of over $650,000,000, producing approximately $840,000,000, of cash flow from tax deductions. Only a very small percentage of the leased assets are located in South Carolina.

The Tax Commission disallowed deductions derived from the safe harbor lease transactions, finding:

1. Pursuant to S.C .Code Ann. § 12-7-1120(3) (Supp. 1990), the safe harbor lease transactions were not connected with Kodak's trade or business;
2. Pursuant to S.C. Code Ann. § 12-7-1120(3) (Supp. 1990), the inclusion of safe harbor lease deductions in Kodak's net income did not produce an apportionable income "reasonably related" to Kodak's business in South Carolina; and
3. The safe harbor lease transactions were not part of Kodak's unitary business.

Circuit Court affirmed the Tax Commission's findings.

### ISSUES
1. Does S.C. Code Ann. § 12-7-1120(3) (Supp. 1990), require allocation of the safe harbor lease transactions to those states where the assets are located?
2. Does the inclusion of the safe harbor lease deductions in Kodak's apportionable net income produce an "un-

---

[1]This has since been repealed.

reasonable result" within S.C. Code Ann. § 12-7-250 (Supp. 1990)?

3. Are the safe harbor lease transactions part of Kodak's unitary business?

## DISCUSSION

### A. § 12-7-1120

S.C. Code Ann. § 12-7-1120(3) (Supp. 1990) provides:

Rents received from lease or rental of real estate or tangible personal property, royalties received from tangible property, *where the property leased or rented was not used in or was not connected with the trade or business* of the taxpayer during the income year, less all related expenses, shall be allocated to the state in which the property was located at the time the income was derived.

(Emphasis supplied.)

The Tax Commission and trial court found that any deductions attributed to the safe harbor leases should have been allocated to those states where the leased assets were located. Specifically, it found that the deductions could not be computed as part of Kodak's apportionable net income in South Carolina, reasoning that the leased assets are not connected with Kodak's general business of photography equipment and film processing.

We disagree and hold that safe harbor lease transactions fall within § 12-7-1120(3) as rental of tangible personal property and, further, as a matter of law, are connected to and involved in Kodak's business. Accordingly, it is not required that they they be allocated only in those states where the leased assets are located.

In making this determination, we find pertinent the North Carolina case of *National Service Industries v. Powers*, 98 N.C. App. 504, 391 S.E. (2d) 509 (1990), *cert. denied*, 327 N.C. 431, 395 S.E. (2d) 685 (1990). In *Powers* the plaintiff corporation entered into a safe harbor lease involving electric generating equipment. The Court held that, even though the corporation was not engaged in the business of generating electricity, the lease was an integral part of its trade or business, since "the lease arrangement was a means of gaining working

capital and increasing cash flow for all of plaintiff's business operations." 98 N.C. App. at 508, 391 S.E. (2d) at 512.

The *Powers* court found noteworthy that the corporation invested approximately 15% of its net worth in the safe harbor lease, generating a substantial amount of cash flow. Here, similarly, Kodak invested approximately 10% of its net worth in the safe harbor leases, generating $1,500,000,000 in depreciation and $172,000,000, in investment tax credits. It is clear from the magnitude and frequency of these transactions that they are connected to Kodak's trade or business.

### B. §12-7-250

S.C. Code Ann. §12-7-250 (Supp. 1990) provides in part:

> If any taxpayer, . . ., is transacting his business partly within and partly without this State, the income tax as provided in this chapter is imposed upon a base which *reasonably represents* the proportion of the trade or business carried on within this State.

(Emphasis supplied.)

The trial court found that the safe harbor lease deductions "distort Kodak's business in South Carolina by inappropriately reducing the share of business carried on in South Carolina." We disagree.

This Court has held that the apportionment formula is a reasonable basis for establishing the income tax of corporations which, like Kodak, do business on a multistate level. *Covington Fabrics v. S.C. Tax Comm'n*, 264 S.C. 59, 212 S.E. (2d) 574 (1975). Since the safe harbor lease transactions were a part of Kodak's general business, they were properly included in the denominator of the apportionment formula in computing Kodak's national net income from payroll, property, and sales. The fact that a very small percentage of the leased assets are located in South Carolina is accounted for in the numerator of the apportionment formula in which Kodak's payroll, property, and sales in this state are computed. Therefore, the apportionment formula reflects a "reasonable representation" of Kodak's business in this state.

### C. Unitary Business Activity

Alternatively, the Tax Commission argues, and the trial

court found, that the income from the safe harbor lease activity should be computed separately as it is not part of Kodak's unitary business. We disagree.

In *Exxon Corp. v. S.C. Tax Comm'n*, 273 S.C. 594, 600, 258 S.E. (2d) 93, 96 (1979), this Court defined unitary business, holding:

> [W]hether or not a business in unitary in nature is given in terms of whether or not the business possesses the characteristics of unity of ownership, unity of management and unity of operation and whether or not the activities of the business in question contribute to or depend on the other activities of the business.

*See also Lowenstein Corp. v. S.C. Tax Comm'n*, 298 S.C. 93, 378 S.E. (2d) 272 (Ct. App. 1989).

Here, we find the safe harbor lease transaction to be part of Kodak's unitary business. Based on *Exxon* and the testimony of record here, the safe harbor lease transactions cannot be segregated from Kodak's general business operations since: (1) the funding for the safe harbor leases came from the general corporate treasury; (2) no separate staff supervised the transactions; and (3) the magnitude of the transactions and resulting tax benefits suggest a significant contribution to Kodak's general business.

## CONCLUSION

In a case at law, this Court is bound by the factual findings of the trial court unless they are found to be without evidentiary support. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). We hold that, on the basis of the trial court's findings of fact, the safe harbor lease tax deductions are connected with Kodak's trade or business under § 12-7-1120(3) and, accordingly, should have been allowed for the 1985 tax year. We REVERSE the Order disallowing the deductions and REMAND to the trial court for a determination of the amount of refund.

Reversed and remanded.

HARWELL, C.J., FINNEY and TOAL, JJ., and JOHN P. GARDNER, Acting Associate Justice, concur.