# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Carmax Auto Superstores West Coast, Inc.,
Respondent/Petitioner,

v.

South Carolina Department of Revenue,
Petitioner/Respondent.

Appellate Case No. 2012-212203

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From The Administrative Law Court
Carolyn C. Matthews, Administrative Law Judge

---

Opinion No. 27474
Heard March 19, 2014 – Filed December 23, 2014

---

## AFFIRMED AS MODIFIED

---

Adam N. Marinelli, Milton G. Kimpson, and Roxanna M.
Tinsley, all of South Carolina Department of Revenue, of
Columbia, for Petitioner/Respondent.

John C. von Lehe, Jr. and Bryson M. Geer, both of
Nelson Mullins Riley & Scarborough, LLP, of
Charleston, for Respondent/Petitioner.

Robert L. Widener and Erik P. Doerring, both of McNair
Law Firm, PA, of Columbia, for Amicus Curiae, South

Carolina State Chamber of Commerce.

Burnet R. Maybank, III, of Nexsen Pruet, LLC, of Columbia and Alexandra E. Sampson, of Reed Smith, LLP, of Washington, DC, for Amicus Curiae, Council on State Taxation.

---

**CHIEF JUSTICE TOAL:**     Both CarMax Auto Superstores West Coast, Inc., (CarMax West) and the South Carolina Department of Revenue (the Department) appeal the court of appeals' decision, reversing and remanding the decision of the Administrative Law Court (ALC) upholding the Department's use of an alternative apportionment formula to calculate CarMax West's income tax for tax years 2002-2007.  We affirm as modified in an opinion which resolves all matters with finality and decline to remand at both parties' request.

### FACTS/PROCEDURAL BACKGROUND

CarMax, Inc., (CarMax) was formed in 1993 as a subsidiary of Circuit City Stores, Inc., and is the nation's largest retailer of used automobiles.  In 2002, CarMax became a separate, publicly-traded holding company of CarMax Auto Superstores, Inc., (CarMax East) and CarMax West, two wholly owned subsidiaries, which primarily performed retail automobile sales.  CarMax East owned and operated the used car superstores on the East Coast and in the Midwest, including South Carolina, and managed all of the financial operations and corporate overhead of CarMax.  CarMax West owned and operated the used car superstores on the West Coast and owned all of the intellectual property.  From 2002-2004, CarMax East paid royalties to CarMax West for the use of this intellectual property in accordance with a licensing agreement.

In 2004, CarMax reorganized its corporate structure, and created CarMax Business Services, LLC (CBS), a multi-member limited liability company with two members: CarMax East and CarMax West.  CarMax East contributed the financing operations and corporate overhead management to the partnership, and CarMax West contributed the intellectual property. Ownership percentages of CBS were based on the value of the assets contributed, and the members' income derives from their respective percentages of ownership.[1]

---

[1] CarMax West owns 93.5% of CBS, and CarMax East owns 6.5% of CBS.

After the restructuring, CarMax East and CarMax West became vehicle retailers only, and CBS began to provide all of the corporate overhead services, house financing operations through its financing arm (CAF), and manage the intellectual property for its members. Both CarMax East and CarMax West pay CBS a management fee for these services.[2]

CarMax West claims that it has no financial connection to South Carolina outside of royalty payments from CarMax East. From 2002-2004, CarMax East made direct payments to CarMax West for use of the intellectual property; and since 2004, CarMax East has made management fee payments to CBS on a per-vehicle-sold basis, and CAF has generated further financing revenue in South Carolina. Because of its status as an LLC, CBS is taxed as a partnership; therefore, both sources of revenue "flow through" CBS to its members, and thus indirectly, to CarMax West.[3]

At issue is how an allocated portion of this income should be taxed in South Carolina. CarMax West initially filed timely corporate income tax returns for tax years 2002-2007.[4] In 2008, the Department audited CarMax West, and issued a proposed assessment, adjusting CarMax West's apportionment formula and imposing penalties. CarMax West filed a protest, and in early 2009, the Department issued a Determination upholding the Department's assessment.

Six months later, CarMax West filed the amended tax returns in question,

---

[2] The management fee is assessed on a per-vehicle-sold basis. CBS further generates revenue from providing financing to CarMax East's and CarMax West's customers through CAF.

[3] By virtue of its status as a "pass-through" entity for taxation purposes, CBS pays no taxes in South Carolina.

[4] In its initial filing, CarMax West utilized a "three-factor" or "three-factor double weighted sales" formula, which calculates a taxpayer's taxable income in South Carolina by computing a ratio of the taxpayer's total property, payroll, and sales. *See* S.C. Code Ann. § 12-6-2250 (Supp. 2009), *repealed by* Act No. 110, 2007 S.C. Acts 557, 595, *and* Act No. 116, 2007 S.C. Acts 688, 741 (repealing with respect to tax years after 2010).

using the statutory apportionment method found in section 12-6-2290 of the South Carolina Code. *See* S.C. Code Ann. § 12-6-2290 (2000 & Supp. 2009). This method, commonly referred to as the "gross receipts method," calculates a multistate taxpayer's taxes due by creating an apportionment ratio that divides the taxpayer's receipts from financing and intangibles in South Carolina by the taxpayer's receipts from financing, intangibles, and retail sales everywhere else the taxpayer does business.[5] CarMax West then multiplied its net income by the apportionment ratio, and multiplied that number by South Carolina's income tax rate to arrive at its South Carolina income tax.

The Department rejected CarMax West's use of the gross receipts method, claiming it did not fairly represent the extent of CarMax West's business dealings in South Carolina. Rather, the Department proposed an alternate apportionment method pursuant to section 12-6-2320(A)(4) of the South Carolina Code. *See* S.C Code Ann. §12-6-2320 (2000 & Supp. 2009).

The Department's proposed alternative formula employed an apportionment ratio of CarMax West's South Carolina income from intangibles and financing divided by CarMax West's intangibles and financing income from everywhere else that it does business. According to the Department, this alternative formula focused on CarMax West's actual business activity in South Carolina. The Department sought to prevent CarMax West from diluting its income by inflating the denominator of its apportionment ratio with sales from its Western retail operations. Furthermore, the Department sought to include the income from the sale of securitized consumer lending contracts in CarMax West's South Carolina income. The Department still sought penalties.

After the Department issued a Final Agency Determination upholding the Department's use of the alternate formula, CarMax West filed a contested case in the ALC. The ALC affirmed the Department's use of an alternative apportionment formula, but dismissed the penalties assessed against CarMax West. The ALC found that (1) the Department demonstrated that the gross receipts formula failed to fairly represent CarMax West's business in South Carolina; (2) the Department's

---

[5] Prior to reorganization, CarMax West classified gross receipts from South Carolina as the royalties, and after the reorganization, CarMax West attributed the royalty portion of CBS as South Carolina receipts, but CarMax West did not include the financing revenue within the numerator of the apportionment factor.

alternate apportionment formula was reasonable with respect to the extent of CarMax West's business activity in South Carolina; (3) the financing receipts were appropriately sourced to South Carolina; and (4) the alternative apportionment formula did not violate the Commerce Clause.

CarMax West appealed the ALC's decision to the court of appeals. *See CarMax Auto Superstores W. Coast, Inc. v. S.C. Dep't of Revenue*, 397 S.C. 604, 725 S.E.2d 711 (Ct. App. 2012). On appeal, CarMax West argued the ALC erred in: (1) applying the wrong burden and standard of proof; (2) failing to consider that CarMax West operates a unitary business and permitting the Department to use separate accounting procedures when calculating tax liability of a unitary business; (3) finding that CarMax West's South Carolina business activities were not accurately calculated using the gross receipts method; (4) using the wrong test in deciding that CarMax West's financing receipts should be sourced to South Carolina; and (6) finding that the Department did not violate CarMax West's constitutional rights by applying a separate accounting to a unitary business and by sourcing financing receipts to South Carolina. *Id.* at 606, 725 S.E.2d at 712. The court of appeals reversed and remanded the case to the ALC for application of the proper burden of proof, without considering the remaining issues. *Id.* at 611, 725 S.E.2d at 714.

Both parties filed petitions for a writ of certiorari. This Court granted review and accepted amici curiae briefs from the Council on State Taxation and the South Carolina State Chamber of Commerce.

## STANDARD OF REVIEW

The Administrative Procedures Act[6] (the APA) "governs appellate review of a final decision from an administrative agency." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 427, 645 S.E.2d 424, 428 (2007) (citation omitted). In appeals taken pursuant to the APA,

> [t]he court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

---

[6] S.C. Code Ann. §§1-23-310 to -400 (Supp. 2013).

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-380(5)(a)–(f) (Supp. 2013).  However, the Court "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact."  S.C. Code Ann. § 1-23-380(5); *MRI at Belfair, LLC v. S.C. Dep't of Health & Envtl. Control*, 379 S.C. 1, 6, 664 S.E.2d 471, 474 (2008).

## ANALYSIS

In South Carolina, corporate income tax "is imposed annually at the rate of five percent on the South Carolina taxable income of every corporation . . . transacting, conducting, or doing business within this State or having income within this State, regardless of whether these activities are carried on in intrastate, interstate, or foreign commerce."  S.C. Code Ann. § 12-6-530 (2014).  "A corporation's taxable income in South Carolina is computed using the Internal Revenue Code with modifications as provided by South Carolina law, and this amount is 'subject to allocation and apportionment as provided in Article 17 of this chapter.'"  *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 145, 694 S.E.2d 525, 528 (2010) (quoting S.C. Code Ann § 12-6-580 (2000)).  When "a taxpayer is transacting or conducting business partly within and partly without this State, the South Carolina income tax is imposed upon a base which reasonably represents the proportion of the trade or business carried on within this State."  S.C. Code Ann. § 12-6-2210(B) (2014).

"Article 17, entitled 'Allocation and Apportionment,' provides certain income that is not related to business activity in South Carolina must be directly

allocated to a taxpayer and is not subject to apportionment." *Media Gen.*, 388 S.C. at 145, 694 S.E.2d at 528 (citing S.C. Code Ann. §§12-6-2220, -2230 (2000 & Supp. 2009)). Any income "remaining after allocation is apportioned in accordance with the general apportionment statute, section 12-6-2250, or one of the special apportionment formulas" provided in Sections 12-6-2290 through 12-6-2310. *Id.* at 145 (citing S.C. Code Ann. § 12-6-2240 (Supp. 2009)).

In this case, CarMax West utilized the statutory formula found in section 12-6-2290 of the South Carolina Code, which requires a taxpayer to "apportion its . . . net income using a fraction in which the numerator is gross receipts from within this State during the taxable year and the denominator is total gross receipts from everywhere during the taxable year." *See* S.C. Code Ann. 12-6-2290. However, the Department sought to use an alternative method of apportionment pursuant to section 12-6-2320(A) of the South Carolina Code, which provides:

> If the allocation and apportionment provisions of this chapter do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for, or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
>
> (1) separate accounting;
>
> (2) the exclusion of one or more of the factors;
>
> (3) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in the State; or
>
> (4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

### Burden of Proof

On appeal, the Department takes issue with the burden of proof adopted by the court of appeals. Specifically, the Department contends the court of appeals erred in applying *Media General*.[7]

---

[7] CarMax West does not contest these findings; rather, CarMax West argues that

In its Order, the ALC properly applied a preponderance of the evidence standard of proof, but also found that because the burden of proof "is generally upon the party asserting the affirmative in an adjudicatory administrative proceeding" and CarMax West requested the contested case hearing to challenge the Department's proposed assessment, then CarMax West bore the burden of proof.

The court of appeals reversed the ALC, finding it applied an incorrect burden of proof under section 12-6-2320(A). *CarMax*, 397 S.C. at 611, 725 S.E.2d at 714. The court of appeals reasoned:

> There are two burdens of proof which must be met in this case. First, we note both the Department and CarMax West agree the Department bears the burden of proving the gross receipts formula does not fairly represent CarMax West's business activity in South Carolina. Second, the Department bears the burden of proving its alternative accounting method is reasonable and more fairly represents CarMax West's business activity in South Carolina.

*Id.* at 611, 725 S.E.2d at 714–15. Moreover, the court of appeals stated that "based on *Media General*, the Department, as the proponent of the alternative apportionment method, must establish that its alternative method is not only appropriate, but more appropriate than any competing methods." *Id.* at 611, 725 S.E.2d at 714. Finding the ALC erred in requiring CarMax West satisfy the second prong of the analysis, the court of appeals reversed the ALC and remanded for a proper application of the burden. *Id.* at 612, 725 S.E.2d at 715.[8]

We find the statutory language of section 12-6-2320(A) clearly evinces a two-part analysis, and we affirm the court of appeals in that respect. However, the

---

the court of appeals erred in refusing to consider the issues posed to it concerning CarMax's status as a unitary business, the sourcing of the financing receipts to South Carolina, and the constitutionality of the Department's application of South Carolina's taxation scheme to it.

[8] The court of appeals rejected CarMax West's contention below that the standard of proof was clear and convincing evidence, and CarMax West has not appealed that ruling. *CarMax*, 397 S.C. at 611–12, 725 S.E.2d at 714–15.

second prong of the analysis is met by a showing that the deviation from a statutory apportionment formula is reasonable, and no further showing is required at that stage. Thus, we find the court of appeals erred in requiring a showing that the Department prove its alternate formula "more fairly represents CarMax West's business activity in South Carolina," and further, we agree with the Department that the court of appeals misapplied *Media General* in holding the Department must prove that its alternate formula is "more reasonable than any competing method."[9]

Accordingly, when a party seeks to deviate from a statutory formula under section 12-6-2320(A), the proponent of the alternate formula bears the burden of proving by a preponderance of the evidence that: (1) the statutory formula does not fairly represent the taxpayer's business activity in South Carolina and (2) its alternative accounting method is reasonable.

In so holding, we reject the Department's argument that the court of appeals erred in failing to shift the burden to prove reasonableness to CarMax West. The Department suggests that because it was the proponent of the statutory formula to which the taxpayer raised an alternative formula in *Media General*, it was required to supply another more appropriate formula in the face of the taxpayer's proposed alternative. Consequently, in this case, where the roles are reversed, the Department argues CarMax West must now prove its formula is more appropriate

---

[9] In *Media General*, it was undisputed that the gross receipts formula did not fairly represent the income of the multi-state taxpayer, and the alternative formula proposed by the taxpayer did in fact fairly measure the taxpayer's business activity in South Carolina. *Media Gen.*, 338 S.C. at 146, 694 S.E.2d at 529. In upholding the application of the alternative formula suggested by the taxpayer, we stated:

> Although the Department has the discretion to select an alternative method, the ALC has ordered in this case that the method be applied and we affirm this determination as the Department has not established that another method would be more appropriate.

*Id.* at 152, 152, 694 S.E.2d at 532. In contrast to the situation that arose in *Media General*—where both parties agreed that the statutory formula did not fairly represent the taxpayer's business in South Carolina—here, there was not the potential for competing alternatives. Therefore, the proponent's showing that the alternative formula is reasonable necessarily ends the inquiry.

than the Department's proposed alternative.

This argument is unavailing because it ignores the clear distinction between this case and *Media General*. There, both the Department and the taxpayer agreed that the statutory formula did not fairly represent the taxpayer's business in South Carolina. The taxpayer supplied an alternative formula, but the Department fell back on the statutory formula. Thus, in the context of that case, affirmation was appropriate on the basis that the Department failed to select an alternative method, but also failed to establish that another method would be more appropriate. Here, however—where the Department alone is arguing that the statutory formula does not fairly represent the taxpayer's business in South Carolina—the Department bears the burden to prove (1) that the statutory formula does not fairly represent CarMax West's business activity in South Carolina and (2) that the proposed alternative formula is reasonable. *Cf. St. Johnsbury Trucking Co. v. State*, 385 A.2d 215, 217 (N.H. 1978) (holding "an alternative formula is the exception, and the party who wants to use an alternative formula accordingly has the burden of showing that the alternative is appropriate"); *Donald M. Drake Co. v. Dep't of Revenue*, 500 P.2d 1041, 1044 (Or. 1972) (holding "the use of any method other than apportionment should be exceptional" and the party seeking to use an alternative method bears the burden of proof).

Therefore, we affirm the court of appeals finding that the ALC erred in placing the burden of proof on CarMax West.

*Application of the Burden*

The Department contends that because it has proved that the statutory formula did not fairly represent a taxpayer's business activity within the state, the only issue on appeal is what burden of proof to apply to the question of whether the Department's formula was reasonable. This formulation of the issue assumes that the Department made a sufficient showing regarding the first prong of the analysis. We find that it did not as a matter of law.[10]

While there is substantial evidence in the record to support the ALC's finding that the Department's alternative accounting method was reasonable, the

---

[10] At oral arguments, upon questioning by Justice Pleicones, both parties agreed that this case should be resolved on this Record as a matter of judicial economy, and that remand was unnecessary.

Department failed to prove the threshold issue that the statutory formula does not fairly represent CarMax West's business activity within South Carolina.

As noted by the South Carolina State Chamber of Commerce in its amicus brief, to satisfy its burden with respect to this first prong, the Department merely "describe[d] what it did rather than cite any evidence justifying what it did." Rather, at trial, the Department relied on CarMax West to refute its use of an alternate formula, and it was in this context that CarMax West raised its unitary business, sourcing, and constitutional arguments.

In its order, the ALC relied on testimony from an auditor that the business structure of CarMax West and CBS is often "linked with tax minimization strategies." Furthermore, the ALC relied on evidence regarding the sourcing of income, and the fact that CarMax West's apportionment ratio yielded a significantly lower tax than that of CarMax East, to support its determination that CarMax West's income was diluted. This was the extent of the evidence offered by the Department to prove the contention that the statutory formula did not fairly represent CarMax West's business activity in South Carolina, other than bald assertions by its witnesses that it satisfied this threshold question.

Even if these findings accurately characterize CarMax West's motives, they do not provide a sound evidentiary basis to support the conclusion that the statutory formula did not fairly represent CarMax West's business in South Carolina. *See St. Johnsbury Trucking Co.*, 385 A.2d at 217 ("Merely because the use of an alternative form of computation produces a higher business activity attributable to New Hampshire, is not in and of itself a sufficient reason for deviating from the legislatively mandated formula." (citations omitted)).

Therefore, we find that the Department failed to satisfy its burden of proof as a matter of law.[11]

## CONCLUSION

---

[11] We need not reach the CarMax West's remaining issues on appeal, as they were all raised as defenses to the Department's use of an alternative apportionment method, and the proper allocation of the burden of proof resolves this appeal. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).

For the foregoing reasons, the opinion of the court of appeals is

**AFFIRMED AS MODIFIED**.

**BEATTY, HEARN, JJ., and Acting Justice James E. Moore concur. PLEICONES, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE PLEICONES:** I concur in part and dissent in part. I agree with the majority that the Court of Appeals was correct in reading S.C. Code Ann. § 12-6-2320(A) (2014) to place a two-part burden on the party seeking to deviate from the standard allocation formula. First, the proponent of the deviation must show that the gross receipts formula does not fairly represent the taxpayer's in-state business activity. Second, the proponent of change must demonstrate that its proposal is reasonable, but not that its alternative is fairer than any other formula. I therefore agree with the majority's modification of the test used by the Court of Appeals, but disagree with the majority's application of these principles here.

Since we are holding that the burden of proof is on the Department, I agree with the Court of Appeals that we should remand this matter to the ALC for reconsideration. Whether the Department can meet its burdens are questions of fact which, in my opinion, should not be decided on certiorari despite the parties' agreement that we do so. The ALC placed the burden of proof on CarMax West, and accordingly its findings of fact and conclusions of law are premised on that error of law. It is therefore not surprising that as the majority states, "the Department relied on CarMax West to refute [the Department's] use of an alternate formula," or that the Department, lacking any burden of proof, largely offered evidence of **what** it did rather than **why** it did it.

In light of our clarification of the burden of proof, I would remand to the ALC with instructions to reconsider this matter and to hold an evidentiary hearing if requested by either party. I would also permit the parties to reargue the points of law raised in their petitions of certiorari but not decided by the Court today.

For the reasons given above, I concur in part, dissent in part, and would remand for reconsideration.