RENT-A-CENTER WEST INC., Appellant,

v.

SOUTH CAROLINA DEPARTMENT
OF REVENUE, Respondent.

Appellate Case No. 2012–208608
Opinion No. 5447

Court of Appeals of South Carolina.

Heard March 16, 2016
Filed October 26, 2016
Rehearing Denied January 20, 2017

John C. Von Lehe, Jr. and Bryson Moore Geer, both of Nelson Mullins Riley & Scarborough, LLP, of Charleston, for Appellant.

William J. Condon, Jr. and Sean Gordon Ryan, both of the South Carolina Department of Revenue, of Columbia, for Respondent.

KONDUROS, J.:

Rent–A–Center West Inc. (RAC West) appeals the administrative law court's (ALC) finding the standard statutory apportionment formula did not fairly represent its business activities in South Carolina and the Department of Revenue's (the DOR) alternative apportionment method for calculating its income tax was reasonable. It also maintains the ALC erred in finding it was not a unitary business. It further asserts the ALC erred by concluding the DOR did not violate its constitutional rights. We reverse.

**FACTS/PROCEDURAL HISTORY**

This case involves the assessment of corporate income tax on RAC West, a subsidiary of the Rent–A–Center Inc. business. Rent–A–Center is a rent-to-own business, providing consumer goods to customers for rent. Rent–A–Center East Inc. (RAC East) owns and operates retail stores in eastern states including South Carolina and is a wholly-owned subsidiary of Rent–A–Center. RAC East has two wholly-owned subsidiaries: RAC West, which owns and operates retail stores in western states, and Rent–A–Center Texas LP, which owns and operates retail stores in Texas and provides management services. RAC West does not operate any retail stores in South Carolina, but it owns and licenses the Rent–A–Center intellectual property, including the trademarks and trade names to all other Rent–A–Center companies. These royalty payments for the use of the intellectual property by the South Carolina stores are RAC West's only activity in the state. This arrangement was formalized in a licensing agreement between RAC West and RAC East. The licensing agreement sets the amount of a royalty fee equal to 3% of the gross revenues of the RAC East stores, an amount based upon a transfer pricing study.[1]

---

1. In the relevant years, this 3% amounted to $830,247 in 2003; $861,437 in 2004; and $844,348.13 in 2005.

RAC West filed their corporate income tax returns for 2003, 2004, and 2005 using the three-factor apportionment formula, consisting of property, payroll, and sales.

The DOR audited RAC West's 2003–2005 initial tax returns and found RAC West owed an additional $144,971 in corporate income tax; $35,086 in interest; and $36,243 in penalties for the period of 2003–2005. According to the DOR, RAC West's only income in South Carolina was the royalty income it obtained from RAC East. The DOR applied an alternative apportionment method pursuant to section 12–6–2320(A) of the South Carolina Code, which it stated "more fairly represent[ed] the taxpayer's activity in South Carolina." The DOR based this alternative apportionment method on RAC West's 3% royalty agreement with RAC East.

RAC West filed an appeal and requested a hearing before the ALC. One month prior to the hearing, RAC West filed amended South Carolina income tax returns, changing the method from the three-factor apportionment formula for dealers of tangible personal property to the gross-receipts method under section 12–6–2290 of the South Carolina Code.[2] This single-factor apportionment formula required RAC West to pay an additional $1,326 in taxes to what it had previously paid.

The ALC held a hearing on August 10 and 11, 2011. The DOR argued RAC West diluted the sales/gross receipts ratio by including the retail sales of RAC West in the denominator because no retail sales are in the numerator, as RAC West's only activity in South Carolina is the licensing of the intellectual property. According to testimony from Dr. Glenn Harrison, the DOR's expert witness on law and economics, the gross receipts ratio did not provide an accurate reflection of the economic connection of RAC West to South Carolina. Dr. Harrison indicated including royalty receipts in the numerator of the ratio while including both total royalty and total retail receipts in the denominator was like putting apples in the numerator and apples and oranges in the denominator. He

---

2. Under section 12–6–2290 of the South Carolina Code (2014), a taxpayer apportions its net income by using a ratio in which the numerator is its gross receipts from within South Carolina during the taxable year and the denominator is its total gross receipts from all states during the taxable year.

further testified the DOR's alternative method was economically reasonable and excluding the retail operations from the calculations was essential in order to "come up with a tax burden that fairly represented the economic nexus of the entity with South Carolina." Additionally, Dr. Harrison indicated even if RAC West was a unitary business, it should still be able to separate its accounts.

RAC West argued there is a unitary relationship between the business activities of the retail stores in the western states and the licensing of intellectual property in other states because the same management is over both businesses and the stores contribute to the profitability of the intellectual property and vice versa. Further, it argued it does not separately track the costs of the intellectual property alone and this South Carolina audit was the first time it had been asked to do so.

According to RAC West's expert economist, Dr. Ronald P. Wilder, and tax policy expert, Professor Richard Pomp, RAC West was a single unitary business based upon the mutual interdependence of the trademark and retail business. Dr. Wilder was asked his opinion of whether or not the standard apportionment formula fairly represented the extent of RAC West's activities in the state, and he responded that it did. Dr. Wilder based this "conclusion on the fact that RAC West uses its total corporation income as what is to be apportioned [and t]hat the use of corporation net income corresponds to the economic concept of profit on which taxable income should be based." When asked what would result if the retail sales from RAC West were not included in the denominator of the apportionment formula, Dr. Wilder explained that because RAC West is a unitary business, the "separate accounting cannot accurately measure the activities of RAC West." Professor Pomp explained the standard apportionment worked the way it was supposed to in this case. He stated, "That's not a defect. That's not anything unusual, out of the ordinary." Further, he found an "inextricable link" and "synergy" between the value of the intellectual property and the profitability of the retail store business.

Joseph P. Southard, a former employee of the DOR who worked specifically on the RAC West audit, testified the audit

began as a routine audit of Rent–A–Center as a whole. When asked why the DOR did not make an assessment based on the standard apportionment formula, Southard responded the gross receipts formula "didn't fit into the definition," so the DOR "had to come up with kind of a hybrid."

The ALC found for the DOR on all issues except the penalty, which it dismissed. Specifically, the ALC found (1) the DOR demonstrated RAC West's apportionment formula failed to fairly represent its business in South Carolina; (2) the DOR's proposed alternative apportionment method was reasonable in light of RAC West's business activities in South Carolina; (3) the imposition of an alternative method in this case did not violate the Constitution; (4) RAC West did not substantiate any expenses, therefore it was not entitled to deduct any expenses; and (5) RAC West was not liable for substantial understatement penalties.

RAC West filed a motion for reconsideration, which the ALC denied. RAC West filed a Notice of Appeal and shortly thereafter requested, with the DOR's consent, a stay of the matter until a final decision was made in *CarMax Auto Superstores West Coast, Inc. v. South Carolina Department of Revenue (Carmax I)*, 397 S.C. 604, 725 S.E.2d 711 (Ct. App. 2012), *aff'd as modified*, 411 S.C. 79, 767 S.E.2d 195 (2014). The parties asserted some or all of the issues could be decided or affected by the final decision in that case. This court granted the stay on April 16, 2012. Following a decision by the supreme court,[3] this appeal proceeded.

**STANDARD OF REVIEW**

The review of the [ALC]'s order must be confined to the record. The court may not substitute its judgment for the judgment of the [ALC] as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

---

**3.** *Carmax Auto Superstores W. Coast, Inc. v. S.C. Dep't of Revenue (Carmax II)*, 411 S.C. 79, 767 S.E.2d 195 (2014).

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1–23–610(B) (Supp. 2015).

■■■■ "In reaching a decision in a contested violation matter, the ALC serves as the sole finder of fact in the *de novo* contested case proceeding." *S.C. Dep't of Revenue v. Sandalwood Soc. Club*, 399 S.C. 267, 279, 731 S.E.2d 330, 337 (Ct. App. 2012). "The Rules of Procedure for the Administrative Law Judge Division require that the AL[C] make independent findings of fact in contested case hearings, and the Administrative Procedures Act clearly contemplates that the AL[C] will make [its] own findings of fact in a contested case hearing." *Reliance Ins. Co. v. Smith*, 327 S.C. 528, 534, 489 S.E.2d 674, 677 (Ct. App. 1997) (citation omitted). When the evidence conflicts on an issue, the court's substantial evidence standard of review defers to the findings of the fact-finder. *Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 210, 712 S.E.2d 428, 435 (2011).

■■■ "The decision of the [ALC] should not be overturned unless it is unsupported by substantial evidence or controlled by some error of law." *Original Blue Ribbon Taxi Corp. v. S.C. Dep't of Motor Vehicles*, 380 S.C. 600, 604, 670 S.E.2d 674, 676 (Ct. App. 2008). "A reviewing court may reverse or modify an administrative decision if the findings of fact are not supported by substantial evidence." *Risher*, 393 S.C. at 210, 712 S.E.2d at 434. "Substantial evidence is 'evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached.'" *Se. Res. Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control*, 358 S.C. 402, 407, 595 S.E.2d 468, 470 (2004) (quoting *Lark v. Bi–Lo*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981)). "Substantial evidence . . . is more than a mere scintilla of evidence." *Original Blue Ribbon Taxi Corp.*, 380 S.C. at 605, 670 S.E.2d at 676.

"A statutory provision should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute." *Lockwood Greene Eng'rs, Inc. v. S.C. Tax Comm'n*, 293 S.C. 447, 449, 361 S.E.2d 346, 347 (Ct. App. 1987). "[T]he construction of a statute by the agency charged with its administration will be accorded the most respectful consideration and will not be overruled absent compelling reasons." *Brown v. S.C. Dep't of Health & Envtl. Control*, 348 S.C. 507, 515, 560 S.E.2d 410, 414 (2002) (alteration by court) (quoting *Dunton v. S.C. Bd. of Exam'rs in Optometry*, 291 S.C. 221, 223, 353 S.E.2d 132, 133 (1987)).

## LAW/ANALYSIS

RAC West argues the ALC erred by finding the standard statutory apportionment formula did not fairly represent RAC West's business activities in South Carolina. We agree.

If a taxpayer is transacting or conducting business partly within and partly without this State, the South Carolina income tax is imposed upon a base which reasonably represents the proportion of the trade or business carried on within this State. A taxpayer subject to taxation under this section is considered to have been transacting or conducting business partly within and partly without the State if the taxpayer is subject to a net income tax or a franchise tax measured by net income in another state, the District of Columbia, a territory or possession of the United States, or a foreign country, or would be subject to the net income tax in any other taxing jurisdiction if the other taxing jurisdiction adopted the net income tax laws of this State.

S.C. Code Ann. § 12–6–2210(B) (2014).

■ For profits or income of a taxpayer derived from sources like those here, "the taxpayer shall apportion its remaining net income using a fraction in which the numerator is gross receipts from within this State during the taxable year and the denominator is total gross receipts from everywhere during the taxable year." S.C. Code Ann. § 12–6–2290 (2014).

If the allocation and apportionment provisions of this chapter do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition for,

or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

(1) separate accounting;

(2) the exclusion of one or more of the factors;

(3) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in the State; or

(4) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

S.C. Code Ann. § 12–6–2320(A) (2014).

In South Carolina, corporate income tax "is imposed annually at the rate of five percent on the South Carolina taxable income of every corporation . . . transacting, conducting, or doing business within this State or having income within this State, regardless of whether these activities are carried on in intrastate, interstate, or foreign commerce."

*Carmax II*, 411 S.C. at 85–86, 767 S.E.2d at 198 (alteration by court) (quoting S.C. Code Ann. § 12–6–530 (2014)). "A corporation's taxable income in South Carolina is computed using the Internal Revenue Code with modifications as provided by South Carolina law, and this amount is 'subject to allocation and apportionment as provided in Article 17 of this chapter.'" *Media Gen. Commc'ns, Inc. v. S.C. Dep't of Revenue*, 388 S.C. 138, 145, 694 S.E.2d 525, 528 (2010) (quoting S.C. Code Ann. § 12–6–580). "When 'a taxpayer is transacting or conducting business partly within and partly without this State, the South Carolina income tax is imposed upon a base which reasonably represents the proportion of the trade or business carried on within this State.'" *Carmax II*, 411 S.C. at 86, 767 S.E.2d at 198 (quoting § 12–6–2210(B)).

"Article 17, entitled 'Allocation and Apportionment,' provides certain income that is not related to business activity in South Carolina must be directly allocated to a taxpayer and is not subject to apportionment." Any income "remaining after allocation is apportioned in accordance with the general apportionment statute, section 12–6–2250, or one of the special apportionment formulas" provided in [s]ections 12–6–2290 through 12–6[–]2310.

*Id.* (quoting *Media Gen. Commc'ns,* 388 S.C. at 145, 694 S.E.2d at 528).

"The purpose of the allocation statutes is to provide for imposition of South Carolina income tax 'upon a base which reasonably represents the proportion of the trade or business carried on within this State.' " *Lockwood Greene Eng'rs, Inc. v. S.C. Tax Comm'n,* 293 S.C. 447, 449, 361 S.E.2d 346, 347 (Ct. App. 1987) (quoting *Hertz Corp. v. S.C. Tax Comm'n,* 246 S.C. 92, 95, 142 S.E.2d 445, 446 (1965)). Our supreme court has held that "the apportionment formula is a reasonable basis for establishing the income tax of corporations which ... do business on a multistate level." *Eastman Kodak Co. v. S.C. Tax Comm'n,* 308 S.C. 415, 419, 418 S.E.2d 542, 544 (1992).

"[T]he statutory apportionment method found in section 12–6–2290 of the South Carolina Code ... [is] commonly referred to as the 'gross receipts method'...." *Carmax II,* 411 S.C. at 83, 767 S.E.2d at 197. "This method ... calculates a multistate taxpayer's taxes due by creating an apportionment ratio that divides the taxpayer's receipts from financing and intangibles in South Carolina by the taxpayer's receipts from financing, intangibles, and retail sales everywhere else the taxpayer does business." *Id.*

In *CarMax,* the corporate structure of CarMax was somewhat similar to Rent–A–Center's.

> In 2002, CarMax became a separate, publicly-traded holding company of CarMax Auto Superstores, Inc., (CarMax East) and CarMax West, two wholly owned subsidiaries, which primarily performed retail automobile sales. CarMax East owned and operated the used car superstores on the East Coast and in the Midwest, including South Carolina, and managed all of the financial operations and corporate overhead of CarMax. CarMax West owned and operated the used car superstores on the West Coast and owned all of the intellectual property. From 2002–2004, CarMax East paid royalties to CarMax West for the use of this intellectual property in accordance with a licensing agreement.

*Id.* at 81–82, 767 S.E.2d at 196.

> In 2004, CarMax reorganized its corporate structure, and created CarMax Business Services, LLC (CBS), a multimember limited liability company with two members: Car-

Max East and CarMax West. CarMax East contributed the financing operations and corporate overhead management to the partnership, and CarMax West contributed the intellectual property. Ownership percentages of CBS were based on the value of the assets contributed, and the members' income derives from their respective percentages of ownership.

After the restructuring, CarMax East and CarMax West became vehicle retailers only, and CBS began to provide all of the corporate overhead services, house financing operations through its financing arm (CAF), and manage the intellectual property for its members. Both CarMax East and CarMax West pay CBS a management fee for these services.

*Id.* at 82, 767 S.E.2d at 196 (footnote omitted).

CarMax West claim[ed] that it ha[d] no financial connection to South Carolina outside of royalty payments from CarMax East. From 2002–2004, CarMax East made direct payments to CarMax West for use of the intellectual property; and since 2004, CarMax East has made management fee payments to CBS on a per-vehicle-sold basis, and CAF has generated further financing revenue in South Carolina. Because of its status as an LLC, CBS is taxed as a partnership; therefore, both sources of revenue "flow through" CBS to its members, and thus indirectly, to CarMax West.

*Id.*

"CarMax West filed the amended tax returns in question, using the statutory apportionment method found in section 12–6–2290 of the South Carolina Code." *Id.* at 83, 767 S.E.2d at 197. That method "requires a taxpayer to 'apportion its . . . net income using a fraction in which the numerator is gross receipts from within this State during the taxable year and the denominator is total gross receipts from everywhere during the taxable year.' " *Id.* at 86, 767 S.E.2d at 198 (alteration by court) (quoting S.C. Code Ann. § 12–6–2290). "CarMax West then multiplied its net income by the apportionment ratio, and multiplied that number by South Carolina's income tax rate to arrive at its South Carolina income tax." *Id.* at 83, 767 S.E.2d at 197.

The DOR "rejected CarMax West's use of the gross receipts method, claiming it did not fairly represent the extent of CarMax West's business dealings in South Carolina. Rather, the [DOR] proposed an alternate apportionment method pursuant to section 12-6-2320(A)(4) of the South Carolina Code." *Id.*

The [DOR]'s proposed alternative formula employed an apportionment ratio of CarMax West's South Carolina income from intangibles and financing divided by CarMax West's intangibles and financing income from everywhere else that it does business. According to the [DOR], this alternative formula focused on CarMax West's actual business activity in South Carolina. The [DOR] sought to prevent CarMax West from diluting its income by inflating the denominator of its apportionment ratio with sales from its Western retail operations. Furthermore, the [DOR] sought to include the income from the sale of securitized consumer lending contracts in CarMax West's South Carolina income.

*Id.* at 84, 767 S.E.2d at 197.

"[T]he statutory language of section 12-6-2320(A) clearly evinces a two-part analysis...." *Id.* at 88, 767 S.E.2d at 199.

[W]hen a party seeks to deviate from a statutory formula under section 12-6-2320(A), the proponent of the alternate formula bears the burden of proving by a preponderance of the evidence that: (1) the statutory formula does not fairly represent the taxpayer's business activity in South Carolina and (2) its alternative accounting method is reasonable.

*Id.* at 89, 767 S.E.2d at 200.

[W]he[n] the [DOR] alone is arguing that the statutory formula does not fairly represent the taxpayer's business in South Carolina[, ]the [DOR] bears the burden to prove (1) that the statutory formula does not fairly represent CarMax West's business activity in South Carolina and (2) that the proposed alternative formula is reasonable.

*Id.* at 89–90, 767 S.E.2d at 200 (citing *St. Johnsbury Trucking Co. v. State*, 118 N.H. 209, 385 A.2d 215, 217 (1978) (holding "an alternative formula is the exception, and the party who wants to use an alternative formula accordingly has the burden of showing that the alternative is appropriate"); *Donald M. Drake Co. v. Dep't of Revenue*, 263 Or. 26, 500 P.2d 1041,

1044 (1972) (holding "the use of any method other than apportionment should be exceptional" and the party seeking to use an alternative method bears the burden of proof)). The threshold issue is whether the statutory formula fairly represents a taxpayer's business activity within South Carolina. *Id.* at 90, 767 S.E.2d at 200.

In *Eastman Kodak Co.*, the court determined:

Since the safe harbor lease transactions were a part of Kodak's general business, they were properly included in the denominator of the apportionment formula in computing Kodak's national net income from payroll, property, and sales. The fact that a very small percentage of the leased assets are located in South Carolina is accounted for in the numerator of the apportionment formula in which Kodak's payroll, property, and sales in this state are computed. Therefore, the apportionment formula reflects a "reasonable representation" of Kodak's business in this state.

308 S.C. at 419, 418 S.E.2d at 544.

In arriving at its decision in *CarMax*,

the ALC relied on testimony from an auditor that the business structure of CarMax West and CBS is often "linked with tax minimization strategies." Furthermore, the ALC relied on evidence regarding the sourcing of income, and the fact that CarMax West's apportionment ratio yielded a significantly lower tax than that of CarMax East, to support its determination that CarMax West's income was diluted. This was the extent of the evidence offered by the [DOR] to prove the contention that the statutory formula did not fairly represent CarMax West's business activity in South Carolina, other than bald assertions by its witnesses that it satisfied this threshold question.

Even if these findings accurately characterize CarMax West's motives, they do not provide a sound evidentiary basis to support the conclusion that the statutory formula did not fairly represent CarMax West's business in South Carolina. *See St. Johnsbury Trucking Co.*, 385 A.2d at 217 ("Merely because the use of an alternative form of computation produces a higher business activity attributable to New Hampshire, is not in and of itself a sufficient reason for

deviating from the legislatively mandated formula." (citations omitted)).

*Carmax II*, 411 S.C. at 90–91, 767 S.E.2d at 201.

 In this case, the burden was on the DOR to show the statutory formula did not fairly represent RAC West's business activity in South Carolina. The DOR presented the same level of evidence in this case as in *CarMax*. Based on the supreme court's holding in *CarMax* the evidence was insufficient to meet the DOR's burden for the threshold issue, we likewise conclude the DOR failed to meet its burden here. Substantial evidence does not support finding the statutory apportionment method fairly reflected RAC West's business activities in South Carolina. The DOR auditor, Southard, testified the investigation started because Rent–A–Center was comprised of multiple entities and he believed a management services fee was too high. He did not point to any specific evidence the standard apportionment method did not fairly represent RAC West's business activities. Additionally, the DOR's expert, Dr. Harrison, indicated excluding the retail operations from the calculations was essential to "come up with a tax burden that fairly represented the economic nexus of the entity with South Carolina." *See id.* at 91, 767 S.E.2d at 201 (holding bald assertions by the DOR's witnesses that it satisfied the threshold question was not enough to meet its burden). Dr. Harrison testified that using the standard apportionment method would be like having apples in the numerator, while having apples and oranges in the denominator. However, this is how the apportionment method is intended to work, as Professor Pomp testified. A very small amount of RAC West's business comes from the royalties; therefore, this should only comprise a small amount of its taxes. *See Eastman Kodak Co.*, 308 S.C. at 419, 418 S.E.2d at 544 ("The fact that a very small percentage of the leased assets are located in South Carolina is accounted for in the numerator of the apportionment formula in which Kodak's payroll, property, and sales in this state are computed. Therefore, the apportionment formula reflects a 'reasonable representation' of Kodak's business in this state."). Accordingly, substantial evidence does not support the ALC's finding the DOR met its burden.

Additionally, because the DOR did not meet its burden in proving the threshold issue of whether the statutory formula

fairly represented RAC West's business activities in the state, we need not decide whether the ALC erred in finding the DOR's alternative method was reasonable. *See Carmax II*, 411 S.C. at 90, 767 S.E.2d at 200 (holding the threshold issue is whether the statutory formula fairly represents a taxpayer's business activity within South Carolina); *see also Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal). Accordingly, the ALC's decision is

**REVERSED.**[4]

HUFF and GEATHERS, JJ., concur.

---

4. RAC West also argues the ALC erred in (1) finding RAC West did not operate a unitary business when the uncontested evidence established it was unitary; (2) allowing the DOR to apply a separate accounting to a unitary business; and (3) concluding the DOR did not violate RAC West's constitutional rights by applying separate accounting to a unitary business. In *CarMax*, similar additional issues were raised. *See Carmax II*, 411 S.C. at 84–85, 767 S.E.2d at 197 ("On appeal, CarMax West argued the ALC erred in ... failing to consider that CarMax West operates a unitary business and permitting the [DOR] to use separate accounting procedures when calculating tax liability of a unitary business ... and ... finding that the [DOR] did not violate CarMax West's constitutional rights by applying a separate accounting to a unitary business and by sourcing financing receipts to South Carolina."). The court in *Carmax II* determined it did not need to reach these issues based on its decision. Based on our decision above, like *Carmax II*, we need not address RAC West's remaining issues. *See id.* at 91 n.11, 767 S.E.2d at 201 n.11 ("We need not reach ... CarMax West's remaining issues on appeal, as they were all raised as defenses to the [DOR]'s use of an alternative apportionment method, and the proper allocation of the burden of proof resolves this appeal." (citing *Futch*, 335 S.C. at 613, 518 S.E.2d at 598)).